JS 44 (Rev. 04/21) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Fayez Elias and Edgewood Partners Insurance Center d/b/a EPIC Insurance Brokers & Consultants

**DEFENDANTS**

USI Insurance Services, LLC

**(b)** County of Residence of First Listed Plaintiff  Florida and California
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Cozen O'Connor 1650 Market Street, Suite 2800, Phila., PA 19103 - 215.665.4181 akrauss@cozen.com

Attorneys *(If Known)*

Holland & Knight 1650 Market Street, Suite 3300, Phila., PA 19103 - 215.252.9600 tara.param@hklaw.com

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1441, and 1446

Brief description of cause:
Claims for only declaratory relief regarding employment contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
November 17, 2025

SIGNATURE OF ATTORNEY OF RECORD
/s/   Matthew Caplan

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Case No. _____

FAYEZ ELIAS
225 N.E. Mizner Boulevard, Suite 675
Boca Raton, FL 33432

And

EDGEWOOD PARTNERS INSURANCE
CENTER, INC. d/b/a EPIC INSURANCE
BROKERS & CONSULTANTS,
1140 A venue of the Americas, 8th Floor
New York, NY 10036

Plaintiffs,

V.

USI INSURANCE SERVICES, LLC,
1787 Sentry Pkwy West, Suite 300
Blue Bell, PA 19422

Defendant

_____/

## NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1441

PLEASE TAKE NOTICE that Defendant USI Insurance Services, LLC ("USI") hereby

gives notice of removal of the above-captioned civil action from the Court of Common Pleas of

Montgomery County, Pennsylvania, to the United States District Court for the Eastern District of

Pennsylvania, Philadelphia Division.  Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, the Court

may and should take jurisdiction over this action for all purposes for the following reasons:

1.      UNDERLYING ACTION:  Plaintiffs Fayez Elias ("Elias") and Edgewood Partners

Insurance Center, Inc. d/b/a EPIC Insurance Brokers & Consultants ("EPIC") (collectively, Elias

and EPIC are "Plaintiffs"), commenced this retaliatory, second-filed action against USI by filing

a Complaint in the Court of Common Pleas of Montgomery County, Pennsylvania, bearing case number 2025-26840 ("Complaint"). Plaintiffs' Complaint asserts two claims for only declaratory relief regarding Elias's employment contract with USI.   *See* **Composite Exhibit 1**.  The value of the object of the litigation sought by the declaratory relief (insurance broker commissions) is more than $75,000.

2.    As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Defendant has satisfied the procedural requirements for removal, and because this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## I.  THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET

3.    Plaintiff served the Complaint upon Defendant on November 5, 2025.  *See* Composite Exhibit 1.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

4.    The Court of Common Pleas of Montgomery County, Pennsylvania, is located in the Eastern District of Pennsylvania.  Therefore, venue is proper pursuant to 28 U.S.C. § 84 because this is the "district and division embracing the place where the action is pending."  *See* 28 U.S.C. § 1441(a).

5.    The Complaint filed against USI in state court and being removed by this filing is a retaliatory action filed against USI by its former employee, Elias, and his new employer, EPIC. Elias is a defendant in a substantive breach of contract action filed by USI on October 10, 2025, that is pending in the United States District Court for the Southern District of Florida and is styled

as *USI Insurance Services, LLC v. Elias*, No. 0-25-CV-62050 (S.D. Fla. Oct 10, 2025) (the "Florida Action").[1]

6.      Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendant, which papers include Plaintiffs' Complaint and service of process, are attached as Composite Exhibit 1 to this Notice of Removal.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs, and a copy is being filed with the clerk of the Court of Common Pleas of Montgomery County, Pennsylvania.

## II.  REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

8.      Defendant USI is a Delaware limited liability company with its principal place of business in New York. USI's sole member, USI, Inc., is a Delaware corporation, with its principal place of business in New York.

9.      Plaintiff Elias is an individual domiciled in Florida.

---

[1]      At the time the Florida Action (as well as this action) was filed, EPIC held itself out as a citizen of California by listing its principal place of business as California in Florida corporate records and by identifying California as the location of its headquarters on EPIC's own website. Notwithstanding, EPIC asserted in the Florida Action that it recently moved its principal place of business from California to New York. USI disputed those assertions based on evidence gathered, but given the exigent circumstances and need for expedited relief (i.e. Elias's ongoing violations of his Agreement and threat of continued irreparable harm to USI), USI dropped EPIC as a defendant without prejudice in the Florida Action to avoid delay in obtaining an injunction hearing. USI intended to address the dispute against EPIC once more information was gathered. The additional information USI has since gathered confirms that EPIC's nerve center, and therefore its principal place of business for jurisdictional purposes, remains in California as discussed herein.

10.     Although Plaintiff EPIC alleges that its principal place of business is in New York, Compl. ¶ 69, substantial evidence demonstrates that EPIC's principal place of business is in California, where it has been located for many years.

11.     For instance, EPIC consistently refers to its "headquarters" as being located in California, including on its website, social media pages, and industry sites. *See* Composite Exhibit 2 at 1 (EPIC's website noting "We are a unique and innovative retail risk management and employee benefits insurance brokerage and consulting firm, *founded in San Francisco, California in 2007* with offices and leadership across the country…*Corporate Headquarters, 100 Montgomery St. Suite 2000 San Francisco, CA 94104*"); Exh. 2 at 2 (EPIC LinkedIn noting "**Headquarters**, San Francisco, California); Exh. 2 at 3 (EPIC's Facebook Page listing contact information in San Francisco, CA); Exh. 2 at 4 ("Headquartered in San Francisco, our company has a nationwide presence with a depth of industry expertise across key lines of insurance..."). Similarly, EPIC directs recruits and vendors to its California headquarters. *See* Exh. 2 at 5. Additionally, executives and decision makers are based in California, including Chairman John Han and Secretary/Director/Chief Legal Officer, Daniel Crawford. Additionally, while EPIC has 62 locations listed nationally, 11 of those locations are in California, with only two in New York. *See* https://www.epicbrokers.com/about/locations/ (last visited Nov. 16, 2025).

12.     Under United States Supreme Court precedent, a company's principal place of business is the place where a corporation's officers direct, control, and coordinate the corporation's activities, known as the corporation's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S. Ct. 1181 (2010).  That nerve center should be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its

board meetings (for example, attended by directors and officers who have traveled there for the occasion).

13.     Because EPIC is headquartered and has its nerve center in California, along with being a registered California corporation, EPIC should be considered a citizen of the state of California for diversity purposes.

14.     The amount in controversy for jurisdictional purposes in this action exceeds $75,000, given the allegations in the Complaint that a declaration as to the enforceability of Elias's Agreement is "necessary for Elias and EPIC to engage in the ordinary course of business" and that the continued business by EPIC with certain clients is affected. *See, e.g.*, Compl. ¶¶ 91, 104. The amount of commissions that this amount of business produces is over $75,000.  *See* Declaration of Charles Maleski, attached as Exhibit 3 ¶ 8.

15.     Additionally, the amount in controversy for jurisdictional purposes in this action exceeds $75,000, given the allegations in the Complaint that a declaration as to the enforceability of Elias's Agreement is necessary for "Elias to earn a living." *See, e.g.*, Compl. ¶¶ 91, 104.  The amount of Elias's salary and bonuses is well over $75,000.  Exh. 3 at ¶ 9.

## III.     THE REQUIREMENTS OF 28 U.S.C. § 1446 ALSO ARE MET

16.     <u>TIMELINESS:</u>  A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other papers from which it may be ascertained that the case is removable.  28 U.S.C. § 1446(b).   USI's designated agent for receipt of service of process first received a copy of the Complaint on November 5, 2025, when it was served by process server.  Composite Exhibit 1.  The Notice of Removal is timely filed as less than 30 days have passed since service.

17.    <u>Removal to Proper Court</u>: This Court is part of the district and division in which the action was filed in Court of Common Pleas of Montgomery County, Pennsylvania.  28 U.S.C § 1446(a).

18.    <u>Procedural Requirements</u>:  As required by 28 U.S.C. § 1446(d), Defendant is filing an appropriate notice in the state court action, and will serve on all counsel of record a true and correct copy of this Notice of Removal. Section 1446(a) also requires a removing party to provide this court a copy of all "process, pleadings, and orders" served on it in the state court action. A true and correct copy of the Complaint and all papers served with the Complaint is attached hereto as Composite Exhibit 1.

WHEREFORE, Defendant USI Insurance Services, LLC respectfully removes this action from the Court of Common Pleas of Montgomery County, Pennsylvania to this Court pursuant to 28 U.S.C. §§ 1332 and 1441.

November 17,2025                                Respectfully submitted,


By: */s/ Matthew Caplan*
HOLLAND & KNIGHT LLP

Richard Harris (PA Bar No. 84897)
Tara Param (PA Bar No. 323171)
Matthew Caplan (PA Bar No. 327876)
 1650 Market Street, Suite 3300
Philadelphia, PA 19103
Tel: (215) 252-9600
Fax: (215) 867-6070
Richard.Harris@hklaw.com
Tara.Param@hklaw.com
Matthew.Caplan@hklaw.com

***Attorneys for Defendant***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 17, 2025, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to

counsel who have appeared in this matter.


Aaron Krauss
Jeffrey Stiles
akrauss@cozen.com
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103

Jason R. Domark
jdomark@cozen.com
Ashley Gomez-Rodon
Agomez-rodon@cozen.com
Cozen O'Connor
200 South Biscayne Blvd, Suite 3000
Miami, FL 33131

*Counsel for Plaintiffs*


*/s/ Matthew Caplan*
Matthew Caplan

# EXHIBIT 1

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

FAYEZ ELIAS

vs.

USI INSURANCE SERVICES LLC

NO. 2025-26840

## <u>NOTICE TO DEFEND – CIVIL</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCIATION
100 West Airy Street (REAR)
NORRISTOWN, PA

19404-0268 (610) 279-9660, EXTENSION 201

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

FAYEZ ELIAS

vs.

USI INSURANCE SERVICES LLC

NO.  2025-26840

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Montgomery County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:    FAYEZ ELIAS, Pro Se

Self-Represented (Pro Se) Litigant  ☐

**Class Action Suit**       ☐ Yes   ☒ No

**MDJ Appeal**   ☐  Yes   ☒  No          **Money Damages Requested** ☐

**Commencement of Action**:                **Amount in Controversy**:

Complaint

## Case Type and Code

Contract: _____

Other

**Other:**    BREACH OF CONTRACT

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Aaron Krauss (62419)
Jeffrey Stiles (332127)
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-4181
akrauss@cozen.com
Attorneys for Fayez Elias and Edgewood
Partners Insurance Center d/b/a EPIC
Insurance Brokers & Consultants

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| FAYEZ ELIAS<br>225 N.E. Mizner Boulavard, Suite 675<br>Boca Raton, FL 33432 | :<br>:<br>: |
| | :    TRIAL DIVISION – CIVIL |
| and | :<br>:    NO: |
| EDGEWOOD PARTNERS INSURANCE<br>CENTER, INC. d/b/a EPIC INSURANCE<br>BROKERS & CONSULTANTS,<br>1140 Avenue of the Americas, 8th Floor<br>New York, NY 10036 | :<br>:<br>:<br>:<br>: |
|            Plaintiffs, | :<br>: |
|    v. | :<br>: |
| USI INSURANCE SERVICES, LLC,<br>1787 Sentry Pkwy West, Suite 300<br>Blue Bell, PA 19422 | :<br>:<br>: |
|            Defendant. | :<br>: |

## <u>NOTICE TO DEFEND</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCIATION
100 West Airy Street (REAR)
 NORRISTOWN, PA 19401
(610) 279-9660, EXTENSION 201
Dated:  October 31, 2025

/s/ Aaron Krauss
Aaron Krauss (62419)
Jeffrey Stiles (332127)
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-4181
akrauss@cozen.com
Attorneys for Fayez Elias and Epic Insurance
Brokers & Consultants

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Aaron Krauss (62419)
Jeffrey Stiles (332127)
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-4181
akrauss@cozen.com
Attorneys for Fayez Elias and Edgewood
Partners Insurance Center d/b/a EPIC
Insurance Brokers & Consultants

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| FAYEZ ELIAS<br>225 N.E. Mizner Boulavard, Suite 675<br>Boca Raton, FL 33432<br><br>and<br><br>EDGEWOOD PARTNERS INSURANCE<br>CENTER, INC. d/b/a EPIC INSURANCE<br>BROKERS & CONSULTANTS,<br>1140 Avenue of the Americas, 8th Floor<br>New York, NY 10036<br><br>     Plaintiffs,<br><br> v.<br><br>USI INSURANCE SERVICES, LLC,<br>1787 Sentry Pkwy West, Suite 300<br>Blue Bell, PA 19422<br><br>     Defendant. | TRIAL DIVISION – CIVIL<br><br>NO: |

## COMPLAINT FOR DECLARATORY RELIEF

Fayez Elias and EPIC Insurance Brokers & Consultants file this complaint for declaratory relief because USI, Elias' former employer, has attempted to enforce unenforceable and inapplicable provisions of Elias' employment contract through a procedurally improper lawsuit in federal court in the Southern District of Florida. In that lawsuit, and otherwise, USI seeks to

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

enforce restrictive covenants (specifically a covenant that purports to prevent Elias from accepting or servicing business from clients he did not solicit) that are unenforceable under Pennsylvania law. Additionally, USI seeks to invoke a non-solicit covenant even though USI has no evidence (because there is no evidence) that Elias solicited anyone. Declaratory relief is therefore necessary because USI threats hinder Elias and EPIC's ability to do business and earn a living.

In support of their complaint, Elias and EPIC aver as follows:

## FACTUAL BACKGROUND

1. Elias began working in the insurance brokerage industry in 2006.

2. Elias specializes in employee benefits insurance, which involves designing, procuring, and servicing employee health insurance plans and related benefits for his business clients.

3. Elias worked as a producer for Beneficial Insurance Services in their Pennsylvania office beginning in 2006.

4. USI bought Beneficial Insurance Services in 2018.

5. Elias did not own any equity in Beneficial, was not a party to the contract under which USI bought beneficial, and did not receive any payment from USI at the closing of USI's purchase of Beneficial.

6. USI is a national insurance brokerage firm.

7. Currently, USI earns more than $2.7 billion in annual revenue as a result of the efforts of more than 10,000 employees who work in more than 200 offices across the country.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

8.      After USI bought Beneficial, Elias signed an employment contract with USI, a true and correct copy of which is attached as Exhibit 1.

9.      Upon information and belief, Exhibit 1 is USI's standard employment contract, and is not tailored to Pennsylvania law.[1]

10.     The employment contract includes non-solicitation and non-acceptance/non-service provisions.  See Exhibit 1 at §§ 8.5 and 8.6.

11.     After USI bought Beneficial, Elias was assigned to, and worked out of, USI's office in Blue Bell, Montgomery County, Pennsylvania.

12.     USI's Blue Bell, Montgomery County, Pennsylvania office was part of USI's MidAtlantic Region, which was comprised of USI's offices in Pennsylvania and New Jersey.

13.     Apart from the retention bonus payment he received seven years ago, Elias' compensation at USI was made up entirely of commissions (i.e. he was only paid on the insurance business that he developed and retained).

14.     Elias' book of business, on which he earned commissions, included many long-term clients.

15.     Elias' relationships with many of his clients had lasted for decades.

16.     For example, Elias had been servicing Presidential Condominium, Society Hill Towers, Rheumatic Disease Associates, and Millennium Health Systems since approximately 2008.

17.     Many of Elias' clients had his personal cell phone number.

---

[1] As discussed below, the contract contains provisions that violate Pennsylvania law.  It also refers to the "State of Pennsylvania" rather than the "Commonwealth of Pennsylvania."

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

18.    Presidential Condominium, Society Hill Towers, Rheumatic Disease Associates, and Millennium Health Systems all had Elias' personal cell phone number.

19.    In 2022, Elias requested permission from his supervisor, Charles Maleski, to move to Florida for family reasons.

20.    Maleski agreed that Elias could move to Florida and continue working for USI.

21.    USI's Florida offices were part of USI's Southeast Region.

22.    Maleski informed Elias that USI's general procedure when a broker changed regions was to "purchase" the broker's existing book of business, and then provide resources to assist the broker to obtain new business in the new region.

23.    For Elias, this would mean that USI would purchase his MidAtlantic book of business (i.e. pay Elias a "run-off" commission on his MidAtlantic book of business for a two year period that would support Elias during the time he needed to build a new book of business in Florida, and which would allow and incentivize Elias to transition his MidAtlantic book of business to another salesperson in USI's MidAtlantic Region) and then provide resources and training to help him obtain business in the Southeast Region.

24.    After receiving USI's approval, Elias purchased a home and moved with his family to Florida.

25.    Rather than facilitate Elias' transition to the Southeast Region as he had originally promised, Maleski informed Elias after he moved to Florida that USI would not transition his MidAtlantic book of business to another MidAtlantic salesperson.

26.    Instead, USI required Elias to continue servicing his MidAtlantic book of business even though he lived in Florida.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

27.     Maleski stated that USI's MidAtlantic and Southeast Regions had reached an agreement that any new business Elias produced in Florida would be credited to the Southeast Region, while any business Elias generated outside of Florida would be credited to the MidAtlantic Region.

28.     Even though Elias had moved to Florida, USI never made him an employee of the Southeast Region.

29.     Instead, Elias remained an employee of the MidAtlantic Region, and continued to be assigned to, and to report to, USI's Blue Bell, Montgomery County, Pennsylvania office.

30.     Maleski told Elias not to inform any of his clients that he had moved to Florida.

31.     USI's refusal to make Elias an employee in the Southeast Region created conflict between the regions, and hindered Elias' ability to develop business.

32.     By way of example, USI internal procedures code certain prospective clients to certain producers. Once coded, only that producer is permitted to pitch business to that client.

33.     After Elias' move to Florida, neither the MidAtlantic Region nor the Southeast Region coded any client prospects to Elias.

34.     Even though USI failed to support Elias (and instead affirmatively hindered his efforts), in 2023 Elias made a large sale in Florida.

35.     The revenue and profit from this sale was credited to USI's Southeast Region.

36.     After Elias made a large sale that was credited to the Southeast Region, Maleski told Elias that he was no longer allowed to sell business in the Southeast Region.

37.     After Elias made a large sale that was credited to the Southeast Region, Maleski told Elias that he was no longer allowed to go into USI's Fort Lauderdale office.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

38.    Elias did not go into any USI office in Florida between the time in 2023 when Maleski told him he was not allowed to do so, and the time he resigned from USI in 2025.

39.    Because USI would not allow Elias to sell new business where he lived in Florida, Elias essentially acted as an account manager for his existing clients in the MidAtlantic Region, despite the fact that his compensation was solely commission-based as a salesperson.

40.    Elias was dissatisfied with this arrangement because he could not earn new commissions.

41.    In approximately June of 2025, Elias was contacted by a headhunter regarding potential employment at EPIC.

42.    Elias resigned from USI on September 5, 2025.

43.    When Elias submitted his resignation, Kent Evans, a USI practice co-leader, told Elias that he had to wait 60 days to resign.

44.    On September 8, 2025, Elias spoke with Maleski and Evans regarding his resignation.

45.    In the conversation, Elias refused to send a new resignation letter effective as of a later date.

46.    Maleski reminded Elias of the restrictive covenants in his employment contract.

47.    After September 5, 2025, Elias stopped working for USI.

48.    Specifically, after September 5, 2025, as a practical matter Elias stopped answering calls to his USI phone number, and as a practical matter stopped answering emails sent to his USI email address.

49.    USI never asked Elias to assist in transitioning his clients to a new producer.

6

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

50.     On October 6, 2025, USI sent Elias a letter signed by the MidAtlantic Chief Executive Officer accepting his resignation effective as of that day.  See Exhibit 3.

## FACTS REQUIRING RELIEF FROM THIS COURT

51.     Elias has not, while working for EPIC, solicited any client of USI.

52.     Elias has not, while working for EPIC, solicited any prospective client that he had approached at USI.

53.     After Elias submitted his resignation to USI, several clients, including Presidential Condominium, Society Hill Towers, Rheumatic Disease Associates, and Millennium Health Systems, called Elias on his personal cell phone regarding their ongoing insurance needs.

54.     Elias informed each of those clients that he had resigned from USI and they would need to contact USI with their questions.

55.     When asked where he was going to work after his resignation, Elias said that he was joining EPIC.

56.     In no way did Elias solicit Presidential Condominium, Society Hill Towers, Rheumatic Disease Associates, and Millennium Health Systems, or attempt to divert their business to EPIC.

57.     Elias did not call or otherwise contact the clients he had serviced while at USI, nor did he ask them to move to EPIC, or attempt to persuade them to move to EPIC.

58.     Presidential Condominium, Society Hill Towers, Rheumatic Disease Associates, and Millennium Health Systems filed broker of record letters making EPIC their insurance broker.  See Exhibit 2.

7

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

59.     In the broker of record letters, each client confirmed that the letter was "written, signed, and sent without inducement, suggestion, persuasion, or solicitation by any individual or entity, and, instead, expresses our independent selection of our preferred insurance broker."

60.     After receiving the broker of record letters contained in Exhibit 2, USI threatened to invoke Section 8.5 and Section 8.6 of Elias' employment contract.

61.     USI threatened to invoke Section 8.5 of Elias' employment contract even though Elias had not solicited any of the clients he had serviced while at USI.

62.     USI also threatened to invoke Section 8.6 of Elias' employment contract even though that clause – which purports to prevent Elias from accepting business from a client, or from servicing that client, even if he did not solicit that client – is unenforceable under the controlling Pennsylvania law.

63.     On October 10, 2025, USI filed a procedurally deficient lawsuit against Elias and EPIC alleging, *inter alia*, that Elias breached his employment contract by "diverting and/or soliciting, accepting business from, Restricted Accounts for the benefit of his new employer, EPIC." See USI Insurance Services, LLC v. Elias, No. 25cv62050 (S.D. Fla. Oct. 10, 2025) Docket 1.

64.     USI has since amended its complaint so that Elias is the only defendant.  See USI Insurance Services, LLC v. Elias, No. 25cv62050 (S.D. Fla. Oct. 25, 2025) Docket 20.[2]

---

[2] The United States District Court for the Southern District of Florida lacked subject matter jurisdiction because USI and EPIC are both citizens of New York.  USI attempted to cure this jurisdictional defect by dismissing EPIC as a party.  EPIC, however, is an indispensable party that must be joined because the clients at issue are EPIC's clients.  See, e.g. Fed. R. Civ. P. 19; Focus on the Fam. v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1279-80 (11th Cir. 2003).  As a result, the United States District Court for the Southern District of Florida still lacks jurisdiction over the lawsuit USI filed.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

65. In addition to filing a complaint (and an amended complaint), USI sought a preliminary injunction. See USI Insurance Services, LLC v. Elias, No. 25cv62050 (S.D. Fla. Oct. 28, 2025) Docket 6 and 22.

66. USI's threats and improperly filed lawsuit have hindered Elias and EPIC's ability to do business and earn a living.

67. Elias intends to continue to live in Florida and pursue clients near where he lives.

## PARTIES

68. Plaintiff Elias lives in Florida and is therefore a citizen of Florida.

69. Plaintiff EPIC is a California corporation with its principal place of business in New York.

70. EPIC is therefore a citizen of California and New York.

71. Defendant USI is a Delaware limited liability company with its principal place of business in New York.

72. USI's sole member is USI, Inc., a Delaware Corporation with its principal place of business in New York.

73. USI is therefore a citizen of Delaware and New York.

## JURISDICTION AND VENUE

74. This Court has subject matter jurisdiction over all of the causes of action in this complaint pursuant to, *inter alia*, 42 Pa. C.S.A. § 931(a) and § 7532.

75. This Court has personal jurisdiction over USI pursuant to 42 Pa. C.S.A. §§ 5301, 5307, and 5308 because USI is qualified and registered to do business in Pennsylvania, because it carries on a continuous and systematic part of its general business in Pennsylvania, because its

9

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

transacts business in Pennsylvania, and/or because it engages in a business or profession in Pennsylvania.

76.     Elias' employment contract contains a choice of venue clause requiring at least some lawsuits arising out of the employment contract to be brought in Pennsylvania. See Exhibit 1 § 10.

77.     Elias' employment contract contains a Pennsylvania choice of law clause. See Exhibit 1 § 13.

78.     Venue is appropriately laid in the Montgomery County Court of Common Pleas pursuant to 42 Pa. C.S.A. § 931(c) and 231 Pa. C.S.A § 2179(a) because USI has, *inter alia*, an office in Montgomery County and regularly conducts business in Montgomery County. Further, events that give rise to this cause of action occurred in Montgomery County.

79.     All conditions precedent to bringing this action have been met or waived.

## COUNT I
## DECLARATORY JUDGMENT THAT THE NON-ACCEPTANCE PROVISON OF ELIAS' EMPLOYMENT CONTRACT IS UNENFORCEABLE

80.     Elias and EPIC incorporate the averments contained in the preceding paragraphs as if fully set forth herein.

81.     Under the Pennsylvania Declaratory Judgment Act, this Court has authority to "declare the rights, status, and other legal relations" of an interested party and "such declarations shall have the force and effect of a final judgment or decree." 42 Pa. C.S.A. § 7532.

82.     USI has threatened to enforce, and has tried to enforce, the non-acceptance provision found in Section 8.6 of Elias' employment contract.

83.     Under the provision, Elias cannot:

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

   a. "... for two (2) years after Producer is no longer employed hereunder . . . (i) sell, provide, or accept any request to provide services in competition with the Company to any Client Account; or (ii) sign or accept a broker of record letter to provide services in competition with the Company to any Client Account." Exhibit 1, Section 8.6(a).

   b. "... for six (6) months after Producer is no longer employed hereunder . . . (i) sell, provide, or accept any request to provide services in competition with the Company to any Active Prospective Client; or (ii) sign or accept a broker of record letter to provide services in competition with the Company to any Active Prospective Client." Exhibit 1, Section 8.6(b).

84.   "In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." See Hess v. Gebhard & Co. Inc., 570 Pa. 148, 157 (2002).

85.   Restrictive covenants are not favored in Pennsylvania and "have been historically viewed as a trade restraint that prevents a former employee from earning a living." Hess v. Gebhard & Co. Inc., 570 Pa. 148, 157 (2002).

86.   A post-employment restriction is only enforceable when it is "reasonably necessary for the protection of the employer when it is narrowly tailored to protect the employer's *legitimate* interests." PharMethod, Inc. v. Caserta, 382 Fed. Appx. 214, 220 (3d Cir. 2010) (emphasis in original).

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

87.     Pennsylvania courts, and courts applying Pennsylvania law, routinely strike non-acceptance provisions from employment agreements since they unreasonably restrain an individual's ability to earn a living and restrict the liberty of third parties who unilaterally seek the services of the restricted individual.  See Diodato v. Wells Fargo Ins. Servs., USA, Inc., 44 F. Supp. 3d 541, 570 (M.D. Pa. 2014); Wells Fargo Ins. Servs. USA, Inc. v. Edgewood Partners Ins. Ctr., 2019 WL 5491353 at *6 (Pa. Super. Ct. Oct. 25, 2019); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moose, 528 A.2d 1351, 1355 (Pa. Super. 1987); see also PharMethod, 382 F. App'x at 219-20.

88.     Pennsylvania courts may choose not to enforce a restrictive covenant that is unreasonable and excessive, rather than "blue pencil" the restrictive covenant.  See Reading Aviation Serv., Inc. v. Bertolet, 454 Pa. 488, 493 (1973).

89.     Under Pennsylvania law, a non-accept provision is void as a matter of law since it is not narrowly tailored to protect the employer' legitimate interest.  See, e.g., Diodato, 44 F. Supp. 3d at 570; Wells Fargo, 2019 WL 5491353 at *6; Merrill Lynch, 528 A.2d at 1355.

90.     Since the prohibition on accepting clients that request his services is unenforceable, so too would a prohibition on providing services to those same clients after their acceptance.

91.     A declaration of whether the non-acceptance/non-service provision in Section 8.6 of Elias' employment contract is enforceable is necessary for Elias and EPIC to engage in the ordinary course of business and for Elias to earn a living.

92.     There exists a live, ripe and justiciable controversy between Elias and EPIC (on the one hand) and USI (on the other hand) over whether Section 8.6 of Elias' employment contract is unenforceable.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WHEREFORE**, Plaintiffs Fayez Elias and EPIC Insurance Brokers & Consultants respectfully request that judgment be entered in their favor, and against Defendant USI Insurance Services, LLC, and that this this Court decree pursuant to 42 Pa. C.S.A. § 7532 that the non-acceptance and non-service provisions found in Section 8.6 of Elias' employment contract are void as a matter of law and unenforceable, and that they be granted costs and such other relief as the Court deems just and equitable.

**COUNT II**
**DECLARATORY JUDGMENT THAT THE NON-SOLICITATION PROVISON OF ELIAS' EMPLOYMENT CONTRACT IS INAPPLICABLE**

93.    Elias and EPIC incorporate the averments contained in the preceding paragraphs as if fully set forth herein.

94.    Under the Pennsylvania Declaratory Judgment Act, this Court has authority to "declare the rights, status, and other legal relations" of an interested party and "such declarations shall have the force and effect of a final judgment or decree." 42 Pa. C.S.A. § 7532.

95.    USI has threatened to, and has attempted to, enforce the non-solicitation provision found in Section 8.5 of Elias' employment contract.

96.    Under the provision, Elias cannot:

    a.    ". . . for two (2) years after Producer is no longer employed hereunder . . . (i) solicit or attempt to solicit services in competition with the Company to any Client Account; (ii) divert or attempt to divert services away from the Company with respect to any Client Account; (iii) consult for any Client Account with respect to services in competition with the Company; (iv) sign a broker of record letter with any Client Account to provide services in competition with Company;

13

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

or (v) induce the termination, cancellation or non-renewal of any Client Account." Exhibit 1, Section 8.5(a). And;

  b. ". . . for six (6) months after Producer is no longer employed hereunder . . . (i) solicit or attempt to solicit services in competition with the Company to any Active Prospective Client; (ii) divert or attempt to divert services away from the Company with respect to any Active Prospective Client; (iii) consult for any Active Prospective Client with respect to services in competition with the Company; or (iv) sign a broker of record letter with any Active Prospective Client to provide services in competition with Company" Exhibit 1, Section 8.6(b).

97. Elias did not solicit the clients he served at USI.

98. Elias did not attempt to divert to EPIC the business of the clients he had served as USI.

99. On the contrary, several of the clients Elias had served at USI called Elias on his personal cell phone.

100. Presidential Condominium, Society Hill Towers, Rheumatic Disease Associates, and Millennium Health Systems filed broker of record letters changing their insurance broker to EPIC. See Exhibit 2.

101. In the broker of record letters, each client confirmed that the letter was "written, signed, and sent without inducement, suggestion, persuasion, or solicitation by any individual or entity, and, instead, expresses our independent selection of our preferred insurance broker." See Exhibit 2.

14

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

102.    USI threatened to pursue claims (and in fact attempted to pursue claims) based on a purported violation of the non-solicitation clause.

103.    In its procedurally deficient lawsuit, USI did not allege any facts that supported the conclusion that Elias solicited his former clients.

104.    A declaration of whether or not Elias violated the non-solicitation clause in his employment contract is necessary for Elias and EPIC to engage in the ordinary course of business and for Elias to earn a living.

105.    There exists a live, ripe and justiciable controversy between Elias and EPIC (on the one hand) and USI (on the other hand) over whether Section 8.5 of Elias' employment contract is applicable because Elias has not solicited his former clients.

**WHEREFORE**, Plaintiffs Fayez Elias and EPIC Insurance Brokers & Consultants respectfully request that judgment be entered in their favor, and against Defendant USI Insurance Services, LLC, and that this this Court decree pursuant to 42 Pa. C.S.A. § 7532 that the non-solicitation provision found in Section 8.5 of Elias' employment contract is inapplicable, and that they be awarded costs and such other relief as the Court deems just and equitable.

Respectfully submitted,


Dated:  October 31, 2025

 /s/ Aaron Krauss
Aaron Krauss (62419)
Jeffrey Stiles (332127)
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-4181
akrauss@cozen.com
Attorneys for Fayez Elias and Edgewood Partners
Insurance Center d/b/a EPIC Insurance Brokers &
Consultants

15

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## **VERIFICATION**

I, Fayez Elias, do hereby state that I am authorized to make this Verification on my and EPIC's behalf, and that the statements set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.  I further state pursuant to Pennsylvania Rule of Civil Procedure 1024(b) that, upon reasonable investigation, I have been unable to determine which of the inconsistent facts which are plead in the alternative and/or in the hypothetical are true, but I reasonably believe that one set of the inconsistent facts are true.  I make this Verification subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Executed on October 31, 2025                    _____
                                                                 *Fayez Elias*

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT 1

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT ("**Agreement**"), effective as of the **Effective Date** (as defined below), is by and between USI Insurance Services LLC, a Delaware limited liability company (the "**Company**") and Fayez Elias ("**Producer**").  The Company and Producer are referred to hereinafter each individually as a "**Party**" and collectively as the "**Parties**".

### RECITALS

WHEREAS, pursuant to that certain Asset Purchase Agreement (the "**Purchase Agreement**") by and among the Company, Beneficial Insurance Services, LLC, a Pennsylvania limited liability company ("**Seller**") and Beneficial Bank, a stock savings bank incorporated under the laws of the Commonwealth of Pennsylvania, the Company will purchase from Seller substantially all of Seller's assets.

WHEREAS, the Company is a subsidiary of USI Advantage Corp. (**"USI"**), a Delaware corporation.

WHEREAS, contingent upon the closing of the transactions contemplated by the Purchase Agreement (the "**Closing**"), and provided this Agreement is accepted in full by Producer, the Company desires to employ Producer on the terms and conditions herein and Producer is willing to accept employment on such terms and conditions.

WHEREAS, Producer's covenants herein are a material inducement for the Company to enter into an at-will employment relationship with Producer.

WHEREAS, Producer hereby acknowledges and agrees that each of the Retention Payment and the Acquisition Bonus (as defined below) is a separate and additional payment to which Producer is not otherwise entitled and constitutes material and sufficient consideration to induce Producer to enter into this Agreement.

WHEREAS, Producer acknowledges and agrees that by virtue of employment hereunder, Producer will receive a direct financial benefit and other good and valuable consideration.

WHEREAS, by virtue of past employment with Seller or any other Predecessor (as defined below) and future employment with the Company, Producer:

(a) had, has, and will continue to have, as applicable, access to, and has gained and will continue to gain knowledge of, Confidential Information, the unauthorized use and/or disclosure of which could cause material and irreparable harm to the Company or any USI Company;

(b) had, has, and will have, significant responsibility for maintaining and enhancing the Goodwill with respect to the Client Accounts and relationships with prospective

Fayez Elias
Validated Producer
(Beneficial_Standard)

1 of 19

EXHIBIT 1

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

clients and will have training and access to certain of the Company's customers and suppliers and, as such, has developed, will develop, and/or will continue to develop close and direct relationships with such customers and suppliers;

(c)     has developed, will continue to develop and/or will develop, as applicable close and direct relationships with the officers, directors, partners, employees, agents, suppliers, licensees, and/or other business relations of the Company or any USI Company or any Predecessor;

(d)     has benefitted, will benefit, and/or will continue to benefit, as applicable, from the Company's and any Predecessor's investment of time, money and trust in Producer and will gain a high level of inside knowledge, influence, credibility, reputation or public persona as a representative or spokesperson of the Company, and, as a result, had, has, and will continue to have, the ability to harm or threaten the Company's legitimate business interests;

(e)     has made use of, and will continue to make use of, Producer's significant skills, training and experience; and

(f)     for these and other reasons, will render services to the Company that Producer acknowledges are special, unique or extraordinary.

WHEREAS, Producer acknowledges and agrees that the Company (on behalf of itself and the USI Companies) has a reasonable, necessary and legitimate business interest in protecting its own and the USI Companies' assets, Confidential Information, Client Accounts, relationships with Active Prospective Clients, Goodwill, employee relationships, and ongoing business, and that the terms and conditions set forth below are reasonable and necessary in order to protect these legitimate business interests.

NOW THEREFORE, in consideration of the Producer's employment with the Company, and the recitals, representations, warranties, covenants, and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are conclusively acknowledged, the Parties, intending to become legally bound, agree as follows:

## AGREEMENT

1.   **DEFINITIONS**.   Capitalized terms not defined elsewhere herein shall have the following meanings ascribed to them:

(a)     "**Active Prospective Client**" means any Person or group of Persons the Company or any Predecessor specifically solicited or had documented plans to solicit within the last six (6) months preceding the termination of Producer's employment hereunder.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(b)   **"Cause"** shall mean (i) commission by Producer of a willful and material act of dishonesty in the course of Producer's duties hereunder; (ii) conviction of Producer by a court of competent jurisdiction of a crime constituting a felony or conviction in respect of any act involving fraud, dishonesty or moral turpitude; (iii) Producer's performance under the influence of illegal drugs or the abuse of legal drugs, or continued habitual intoxication, during working hours, after the Company shall have provided notice to Producer and given Producer 30 days within which to commence rehabilitation with respect thereto, and Producer shall have failed to commence such rehabilitation or continued to perform under the influence after such rehabilitation; (iv) frequent or extended, and unjustifiable (not as a result of incapacity or disability) absenteeism which shall not have been cured within 30 days after the Company shall have advised Producer of its intention to terminate Producer's employment for Cause, in the event such condition shall not have been cured; (v) Producer's personal, willful and continuing misconduct or gross negligence that is injurious to the Company's reputation or business; (vi) refusal to perform duties and responsibilities described in this Agreement (or as they may be assigned from time to time), or to carry out reasonable and lawful directives of the Regional CEO or such Regional CEO's designee, including with respect to execution of any material policy; in each case which, if capable of being cured, shall not have been cured within 60 days after the Company shall have advised Producer of its intention to terminate Producer's employment for Cause; or (vii) material non-compliance with the terms of this Agreement.

(c)   **"Client Account"** means the account of any client (including, without limitation, any retail insurance agent or broker, individual insured, association and any member thereof, and any insurance carrier or other entity to the extent third party administration claims processing or underwriting is performed by a USI Company for such carrier or other entity) which is or was serviced by a USI Company or any Predecessor in connection with such USI Company's or Predecessor's business, regardless of whether such services are provided by, or through the licenses of a USI Company or any Predecessor or any shareholder, employee or agent of a USI Company or Predecessor.

(d)   **"Coded to Producer"** means all policies and other business coded to Producer, as determined in good faith by the Company based on standards generally used in the insurance industry.

(e)   **"Competitive Business"** means any Person engaged in the production, distribution, marketing or sale of a Competitive Product.  Where a Competitive Business is part of a larger business involving both competitive and non-competitive products, the terms of this Agreement shall only apply to that part of the business which involves the production, distribution, marketing or sale of a Competitive Product.

(f)   **"Competitive Product"** means any product or service, in existence, that competes, or is reasonably anticipated to compete, in the same markets with a product or

service of the USI Companies or any Predecessor, in existence, which Producer or the Company or any Predecessor has sold, marketed, distributed or developed in the last two (2) years of Producer's employment with the Company or any Predecessor, or about which Producer has acquired Confidential Information.

(g) "**Confidential Information**" means any information of the Company, any Predecessor and/or a USI Company that is not generally available to the public (unless such information has entered the public domain and become available to the public through fault of the Party to be charged hereunder), including but not limited to:  (i) the identity, authority and responsibilities of key contacts and decision-makers employed by the Client Accounts or Active Prospective Clients; (ii) types, terms and conditions of coverage and particularized insurance needs, requirements, risk specifications, preferences, expiration dates, claims and loss histories, and commission rates, fees and premiums of the Client Accounts or Active Prospective Clients; (iii) terms and conditions of benefits and compensation plans of the Client Accounts or Active Prospective Clients; (iv) information furnished to the Company or any Predecessor in confidence by any Client Account or Active Prospective Client; (v) business plans, marketing strategies, and pricing structure, criteria and formulae for insurance and benefits products and claims management, and unpublished financial data and statements of the Company and its corporate affiliates or any Predecessor; (vi) lists of the Client Accounts or Active Prospective Clients, and any analyses and compilations thereof; (vii) data, analyses, lists, and business methodologies regarding prospective employees, candidates or hiring targets of the Company or any Predecessor; (viii) compilations and lists of names and other personally identifiable information regarding Company or Predecessor employees; (ix) information that is password-protected; (x) all internal memoranda and other office records, including electronic and data processing files and records; (xi) all other proprietary information of the Company, any Predecessor or a USI Company, including any information contained within a proprietary database and workbook product binders including without limitation OMNI Solutions Workbooks, OMNI Library Pages, OMNI Case Studies, and other OMNI Work Product; and (xii) all other information that constitutes a trade secret under applicable law.

(h) "**Effective Date**" means the day after the Closing date.

(i) "**Goodwill**" means the competitive advantage, including the expectation of new and/or continued patronage from Client Accounts and Active Prospective Clients based on the Company's or any Predecessor's investment in repeated contacts, business transactions, Confidential Information, and other efforts to develop lasting relationships.

(j) "**Net Commissions and Fees**" means all commissions and fees received and actually collected by the Company, specifically on a policy Coded to Producer, less payments to external service providers such as, but not limited to vendors and value-added

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

service providers, and/or to other USI Companies, and any sponsorships and/or charitable contributions made to a client by the Company, unless otherwise provided for by local USI practice. "Net Commissions and Fees" shall not include any overrides or profit-sharing; interest on premiums on deposit; or contingent, bonus, excess, supplemental, non-standard, annually computed, non-specific volume based, or any other similar commissions or fees.

(k)   **"New"** means any policy lines of coverage for a new client or any new policy lines of coverage for an existing client written by the Company or the other USI Companies, as the case may be. New will not encompass any client for which similar coverage was in-force in the previous twelve (12) months and such business will be considered Renewal business. For policies with a coverage period of more than twelve (12) months, New shall be determined by the Company in accordance with the Company's policies in effect at such time.

(l)   **"Person"** means an individual, a partnership, a corporation, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, a limited liability company, or a governmental entity (or any department, agency, or political subdivision thereof).

(m)   **"Predecessor"** means any Person, in its capacity as predecessor-in-interest to the assets of the Company, including, for the avoidance of doubt, Seller.

(n)   **"Producer's Book of Business"** means the annual Net Commissions and Fees received by the Company on Client Accounts Coded to Producer.

(o)   **"Renewal"** means the second and any subsequent year of any New coverage. For policies with a coverage period of more than twelve (12) months, Renewal shall be determined by the Company in accordance with the Company's policies in effect at such time.

(p)   **"USI Business"** means the businesses provided by the USI Companies, including, without limitation, insurance agency and brokerage, and related insurance services.

(q)   **"USI Companies"** or **"USI Company"** means USI, its subsidiaries (including the Company), and any entity under the control (as defined in Rule 12b-2 of the regulations promulgated under the Securities Exchange Act of 1934, as amended, without regard to whether any party is a "registrant" under such Act) of USI, and any of their successors or assigns.

2.   **POSITION, RESPONSIBILITIES AND TERM**

2.1.   ***Position and Responsibilities***.   On the terms and conditions in this Agreement, and conditioned upon the Closing, the Company shall employ Producer as a Producer. Producer shall perform all services and duties customarily attendant to such position

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and such other services and duties commensurate with such position as prescribed from time to time by Producer's Regional CEO or his/her designee (hereinafter, the "**Regional CEO**"). Nothing in this Agreement shall confer upon Producer any right to continued employment hereunder.

2.2. ***Insurance Licenses***. Producer shall obtain and retain the proper licenses for all lines of insurance solicited and serviced by Producer. Notwithstanding anything to the contrary in this Agreement, Producer acknowledges Producer is not entitled to any commissions for sales or servicing of policies within a line of insurance if Producer is not properly licensed for such line of insurance.

2.3. ***No Conflicts of Interest***. During Producer's employment hereunder, Producer agrees not to accept other employment or perform any activities or services that would be inconsistent with this Agreement or would interfere with or present a conflict of interest concerning Producer's employment with the Company, unless disclosed to and agreed to by the Regional CEO and Chief Compliance Officer in writing. Producer agrees to comply with all business practices and ethical conduct requirements set forth in writing by USI and/or the Company in employee manuals and other publications.

2.4. ***Duty of Loyalty***. Producer acknowledges a duty of loyalty to the Company and agrees to use his/her best efforts to faithfully, diligently and completely perform all duties and responsibilities hereunder in furtherance of the business of the USI Companies.

2.5. ***Term***. This Agreement, including Producer's employment hereunder, shall commence on the Effective Date and continue until terminated pursuant to Section 9 (the "**Term**").

3. **COMPENSATION AND BENEFITS**

3.1. ***Draw***. The Company agrees to pay Producer commissions, calculated pursuant to Section 3.2, and a recoverable draw against such future commissions in an amount determined by the Company based on Producer's Book of Business ("**Draw**"); provided, however, the Company may adjust Producer's Draw upward or downward in its discretion to fairly reflect the commissions Producer will likely earn based on Producer's Book of Business. The Draw shall be earned and offset by commissions earned by Producer pursuant to this Agreement. The Draw will be payable in equal installments by the Company (or another USI Company designated by the Company) according to its normal payroll practices.

3.2. ***Calculation of Commissions***. The Company agrees to pay Producer commissions calculated in accordance with the following policies:

(a) Forty percent (40%) of annual Net Commissions and Fees received by the Company on Client Accounts for New policies (except thirty percent (30%) on New Surety business, Builders Risk business, and WRAP products, and thirty percent (30%) on

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

New policies with non-recurring revenue, including individual life insurance policies) assigned and Coded to Producer as the sole originating/selling and sole servicing producer in accordance with the Company's producer compensation policies.   For the avoidance of doubt, Producer shall not be paid commissions for New policies on accounts below the account minimums set forth in Section 3.2(f) below.

(b)   Twenty-five percent (25%) of annual Net Commissions and Fees received by the Company on Client Accounts for Renewal policies (except thirty percent (30%) on Renewal Surety business, Builders Risk business, and WRAP products, and zero percent (0%) on Renewals of personal lines policies) assigned and Coded to Producer as the sole originating/selling and sole servicing producer in accordance with the Company's producer compensation policies.   For the avoidance of doubt, Producer shall not be paid commissions for (i) Renewal policies on personal lines policies or (ii) accounts that fall below the account minimums set forth in Section 3.2(f) below.

(c)   Fifteen percent (15%) of annual Net Commissions and Fees received by the Company on Client Accounts for policies:  (i) transferred by the Company; and (ii) assigned and Coded to Producer as servicing producer (but not originating/selling producer) in accordance with the Company's producer compensation policies.

(d)   An amount determined on a case by case basis by the Company for Client Accounts where a substantial portion of fee based revenue is attributable in whole or part to Producer's efforts as an originating/selling or servicing producer.

(e)   An amount determined by the Company's policies then in effect on Client Accounts, except for transferred business in Section 3.2(c), for which Producer is not both the sole originating/selling producer and the sole servicing producer.

(f)   No commission will be paid on Client Accounts Coded to Producer that generate annual Net Commissions and Fees of less than Ten Thousand  Dollars ($10,000) on commercial property and casualty,  or Ten Thousand Dollars ($10,000) on employee benefits.  There is no minimum on personal lines.

(g)   Producer's commissions shall be reduced by payments to co-brokers, sub-brokers, and sub-producers (including commissions and fees), referral fees, and return commissions, so that the Company's total payments to all Persons from the Net Commissions and Fees do not exceed any applicable maximum commission percentages under Company policy as amended from time to time.

(h)   Producer's commissions shall be reduced by, and Producer shall have an ongoing duty to return to the Company, any commissions previously paid to Producer on premiums or fees subsequently refunded or not collected by the Company. Producer shall be subject to any Company policies regarding charges to and/or

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

deductions from commissions in effect at the time such commissions are determined.

(i)  Producer's commissions shall not be considered earned until all charges and/or deductions have been made pursuant to this Agreement and the Company's compensation policies.  In addition, such commissions only become earned by Producer if Producer is still employed hereunder on the date the Company receives such commissions.

(j)  Notwithstanding anything herein to the contrary, from the Effective Date through September 30, 2020 Producer shall not receive commissions on the accounts set forth on Exhibit A hereto.  Thereafter, to the extent that the policies listed on Exhibit A hereto are still in force and not written by another employee of any USI Company, commissions for such policies will resume pursuant to and subject to this Agreement.

3.3.  ***Payment of Commissions***.  The Company shall calculate, no less often than quarterly, commissions earned by Producer and received by the Company.  Earned commissions shall be offset against Producer's Draw for the prior periods.  Earned commissions in excess of such offsets, if any, shall be due and payable as soon as they can be reasonably calculated but no later than sixty (60) days after each quarter.  If Producer's Draw and any other applicable offsets for such period exceed Producer's earned commissions, such shortfall may be offset against installments of Producer's Retention Payment under Section 4 and/or installments of Producer's Draw for subsequent quarters and Producer's Draw for the subsequent quarter may be reduced commensurate with current earned commission levels to minimize the risk of a shortfall in the new period.

3.4.  ***Commissions Upon Termination***.  Producer acknowledges that Producer shall not be eligible to earn or receive any commissions received by the Company after Producer is no longer employed hereunder because Producer will no longer be performing the essential duties of Producer's position which form the basis for such compensation. Accordingly, if Producer's employment hereunder is terminated for any reason, including death, the Company shall calculate commissions earned by Producer and received by the Company prior to Producer's termination. Earned commissions shall be offset against Producer's Draw for the prior periods.  Earned commissions in excess of such offsets, if any, shall be due and payable as soon as they can be reasonably calculated but no later than sixty (60) days after the effective date of Producer's termination.  No further commissions shall be due or payable after such payment.  If Producer's Draw and any other applicable offsets for such period exceed Producer's earned commissions, such shortfall shall be due and payable to the Company within sixty (60) days after the effective date of Producer's termination.

3.5.  ***Right to Modify***.  The Company may modify the policies and terms in Section 3, including any commission percentages or other amounts herein, by giving at least thirty

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(30) days written notice to Producer, provided, however, that the Company may not modify the commission percentages set forth in Section 3.2(a) and 3.2(b) prior to the end of the Measurement Period without Producer's consent.  For the avoidance of doubt, the Company may modify any commission percentages following the end of the Measurement Period.   Producer's continued employment hereunder following any change shall be considered sufficient consideration for, and acceptance of, such change.

3.6.   *Tax Withholding*.  The Company shall deduct from all payments and benefits under this Agreement any taxes required to be withheld and/or paid pursuant to federal, state and local taxing authorities.

3.7.   *Benefits*.  Producer shall be entitled to benefits, other than paid time off, on the same terms generally provided to similar employees of the Company.  Notwithstanding the foregoing, nothing contained in this Agreement shall require the Company to establish, maintain or continue any of the benefit plans already in existence or hereafter adopted for producers of the Company, or restrict the right of the Company to amend, modify or terminate such benefit plans.

3.8.   *Paid Time Off*.  Producer shall not accrue or be entitled to any paid time off ("**PTO**") under this Agreement or the Company's PTO policy.

4.   **RETENTION BONUS PAYMENT.**  Producer shall be eligible for a special retention bonus payment (the "Retention Payment").

4.1.   *Amount.*  The amount of the Retention Payment shall be equal to seventy five percent (75%) of the average annual Net Commissions and Fees received by the Company (subject to the exceptions set forth at the end of this Section 4.1) in each case, for Client Accounts assigned and Coded to Producer (for the avoidance of doubt, in the case of commission splits, only with respect to the portion Coded to Producer) during each of (a) the period beginning on the first anniversary of the Effective Date and ending one (1) day prior to the second anniversary of the Effective Date, (b) the period beginning on the second anniversary of the Effective Date and ending one (1) day prior to the third anniversary of the Effective Date and (c) the period beginning on the third anniversary of the Effective Date and ending one (1) day prior to the fourth anniversary of the Effective Date (collectively, the "**Measurement Period**").  By way of example, if the Effective Date is September 1, 2018, and Net Commissions and Fees in Producer's book of business (subject to the exceptions set forth at the end of this Section 4.1) are $900,000 for the year beginning September 1, 2019 and ending August 31, 2020, and $1,000,000 for the year beginning September 1, 2020 and ending August 31, 2021, and $1,100,000 for the year beginning September 1, 2021 and ending August 31, 2022, the amount of the Retention Payment would be $750,000 (the average of $900,000, $1,000,000 and $1,100,000 equals $1,000,000, multiplied by seventy five percent (75%) equals thereto). When calculating the Net Commissions and Fees received by the Company, the following Net Commissions and Fees shall be excluded and not counted

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

toward the Retention Payment (i) Client Accounts transferred to Producer by the Company or a USI Company after the Effective Date, (ii) life insurance, other heaped commission life and health insurance products, and any heaped commission property and casualty insurance products, (iii) Net Commissions and Fees for Client Accounts that do not meet the account minimums required to receive commissions as set forth in this Agreement, any amendment thereto or any modification pursuant to Section 3.5, and (iv) large, non-recurring, and unusual commissions and fees, each as reasonably determined by the Company.

4.2. **_Timing and Eligibility._** The Company shall pay Producer fifty percent (50%) of the Retention Payment within forty-five (45) days following the end of the Measurement Period, and the remaining fifty percent (50%) of the Retention Payment shall be paid to Producer on the payroll date immediately following the first anniversary of the payment of the first installment. Continuing on with the example in Section 4.1 above, the first installment of $375,000 would be paid within forty-five (45) days after August 31, 2022, and the remaining installment of $375,000 would be paid on the payroll date immediately following the one (1) year anniversary of the date of payment of the first installment. If Producer's employment with the Company terminates or Producer is not actively employed on the dates the installment payments under this Section 4.2 are due, Producer shall not earn or be paid such installment. Notwithstanding the foregoing, if Producer is employed by the Company as of the last day of the Measurement Period and the Company thereafter terminates Producer's employment without Cause, or Producer's employment terminates by reason of death or disability, or if Producer becomes employed by a successor or assign of the Company, then Producer or Producer's estate shall nevertheless be eligible to receive any installment payment Producer would otherwise be eligible to receive, in accordance with the timetable set forth in this Section 4.2. For the avoidance of doubt, if (i) the Company terminates Producer's employment with Cause before or after the Measurement Period, (ii) Producer resigns or terminates employment for reasons other than death or disability after the Measurement Period, or (iii) Producer is not actively employed with the Company for any reason before the end of the Measurement Period, then in each case, Producer shall not earn or be paid any installment of the Retention Payment that Producer has not already been paid. Each installment of the Retention Payment is subject to offset as set forth in Section 3.3.

5. **ACQUISITION BONUS**

5.1 **_Acquisition Bonus._** The Company shall pay Producer $215,623 (the "**Acquisition Bonus**") payable in three (3) installments, the first two of which shall be $94,009 each and the last of which shall be $27,605. The installments will be paid on the payroll immediately following each of the following dates: (i) thirty (30) days after the Effective Date, (ii) the first anniversary of the Effective Date and (iii) the second anniversary of the Effective Date, respectively.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

5.2 ***Eligibility for Acquisition Bonus***. Notwithstanding the foregoing, if Producer's employment with the Company terminates or Producer is not actively employed for any reason on the dates the installment payments under Section 5.1 are due, Producer shall not earn or be paid such installment.

6. **EXPENSES**. The Company shall reimburse Producer, in accordance with and subject to Company and USI policy, as amended from time to time, for expenses reasonably and properly incurred by Producer in connection with the performance of Producer's duties hereunder and the conduct of the business of the Company.

7. **COMPANY PROPERTY**. Producer acknowledges and agrees all Confidential Information, including information transferred from Seller under the Purchase Agreement, which Producer has access to, receives or generates in the course of providing any USI Business, shall be the sole property of the Company and/or USI Companies, as the case may be, and shall remain with the Company and/or USI Companies upon termination of Producer's employment. Producer further acknowledges and agrees that Producer has no ownership rights to any Client Accounts and that the Client Accounts are owned by the Company and/or USI Companies.

8. **COVENANTS**

8.1. ***Confidential Information***. The Company agrees to provide Producer with Confidential Information to assist Producer in the course and scope of Producer's duties. Producer acknowledges that the Company's agreement to provide this Confidential Information to Producer is in consideration for, and ancillary to, Producer's agreement to the other terms in this Agreement.

8.2. ***Confidentiality During and Following Term***. During the Term and for five (5) years after Producer is no longer employed hereunder, for any reason, Producer will not use or disclose any Confidential Information except: (a) in the normal course of business on behalf of the Company; (b) with the prior written consent of such USI Company; or (c) to the extent necessary to comply with the law or the valid order of a court of competent jurisdiction, in which event Producer shall notify such USI Company as promptly as practicable (and, if possible, prior to making such disclosure). Producer will also use reasonable efforts to prevent any prohibited use or disclosure by any other Person. Notwithstanding anything in this Agreement to the contrary, nothing contained herein prohibits Producer from reporting, without the prior authorization of the Company and without notifying the Company, possible violations of federal law or regulation to the United States Securities and Exchange Commission, the United States Department of Justice, the United States Congress or other governmental agency having apparent supervisory authority over the business of the Company, or making other disclosures that are protected under the whistleblower provisions of Federal law or regulation.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

8.3. ***Defend Trade Secrets Act Required Notice***.  Notwithstanding anything in this Agreement to the contrary, pursuant to the Defend Trade Secrets Act of 2016, Producer acknowledges and understands that:

(a) An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that:  (i) is made (A) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney, and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(b) An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual:  (i) files any document containing the trade secret under seal; and (ii) does not disclose the trade secret, except pursuant to court order.

8.4. ***Assignment and Ownership of Intellectual Property***.  Producer acknowledges and agrees that any Intellectual Property (as defined herein) shall be "works made for hire" under the United States Copyright Act and that the Company shall be deemed the inventor, author and exclusive owner thereof together with all related intellectual property rights and exploitation rights for the longest period permitted by law.  To the extent, if any, that any Intellectual Property is not deemed a "work made for hire" or that Producer is otherwise deemed to retain any rights, title or interest in or to any Intellectual Property, Producer hereby irrevocably transfers and assigns to the Company all rights, title and interest Producer may have or acquire to such Intellectual Property, without additional compensation, and hereby irrevocably waives any so-called moral rights of authors or other special rights which Producer may have or acquire therein. "**Intellectual Property**" means any advertisements, images, slogans, logos, designs, sketches, mock-ups, samples, concepts, ideas, inventions, original works of authorship, computer software programming of any nature, discoveries, techniques, copyrights, patents, trademarks or the like, conceived or made by Producer in whole or in part during Producer's employment with the Company or any Predecessor:  (a) using Producer's relationship with the Company or any Predecessor; (b) using Confidential Information or the Company's or any Predecessor's time, resources, facilities, supplies, equipment or trade secrets; (c) relating to the Company's or any Predecessor's present or future business; or (d) resulting from Producer's work for the Company or any Predecessor.

8.5. ***Non-Solicitation of Clients and Active Prospective Clients***.  In consideration of Producer's employment hereunder, and for other good and valuable consideration, Producer agrees:

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(a)  During the Term and for two (2) years after Producer is no longer employed hereunder, for any reason, Producer shall not, directly or indirectly, on behalf of any Competitive Business in any capacity:  (i) solicit or attempt to solicit services in competition with the Company to any Client Account; (ii) divert or attempt to divert services away from the Company with respect to any Client Account; (iii) consult for any Client Account with respect to services in competition with the Company; (iv) sign a broker of record letter with any Client Account to provide services in competition with the Company; or (v) induce the termination, cancellation or non-renewal of any Client Account; in each case with respect to any Client Account that Producer managed or regularly serviced and/or about which Producer obtained Confidential Information on behalf of the Company or any Predecessor within the last two (2) years preceding the termination of Producer's employment hereunder.

(b)  During the Term and for six (6) months after Producer is no longer employed hereunder, for any reason, Producer shall not, directly or indirectly, on behalf of any Competitive Business in any capacity:  (i) solicit or attempt to solicit services in competition with the Company to any Active Prospective Client; (ii) divert or attempt to divert services away from the Company with respect to any Active Prospective Client; (iii) consult for any Active Prospective Client with respect to services in competition with the Company; or (iv) sign a broker of record letter with any Active Prospective Client to provide services in competition with the Company; in each case with respect to any Active Prospective Client that Producer solicited and/or about which Producer obtained Confidential Information on behalf of the Company or any Predecessor within the last six (6) months preceding the termination of Producer's employment hereunder.

8.6.  ***Non-Acceptance / Non-Service of Clients and Active Prospective Clients***.  In consideration of Producer's employment hereunder, and for other good and valuable consideration, Producer agrees:

(a)  During the Term and for two (2) years after Producer is no longer employed hereunder, for any reason, Producer shall not, directly or indirectly, on behalf of any Competitive Business in any capacity:  (i) sell, provide, or accept any request to provide services in competition with the Company to any Client Account; or (ii) sign or accept a broker of record letter to provide services in competition with the Company to any Client Account; in each case with respect to any Client Account that Producer managed or regularly serviced and/or about which Producer obtained Confidential Information on behalf of the Company or any Predecessor within the last two (2) years preceding the termination of Producer's employment hereunder.

(b)  During the Term and for six (6) months after Producer is no longer employed hereunder, for any reason, Producer shall not, directly or indirectly, on behalf of any Competitive Business in any capacity:  (i) sell, provide, or accept any request to provide services in competition with the Company to any Active Prospective Client;

Fayez Elias
Validated Producer
(Beneficial_Standard)

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

or (ii) sign or accept a broker of record letter to provide services in competition with the Company to any Active Prospective Client; in each case with respect to any Active Prospective Client that Producer solicited and/or about which Producer obtained Confidential Information on behalf of the Company or any Predecessor within the last six (6) months preceding the termination of Producer's employment hereunder.

8.7. **Non-Interference With Employees**. In consideration of Producer's employment hereunder, and for other good and valuable consideration, Producer agrees, during the Term and for two (2) years after Producer is no longer employed hereunder, for any reason, Producer shall not, directly or indirectly, on behalf of any Competitive Business in any capacity: (a) solicit the employment, consulting or other services of, or hire, any other employee of the Company; or (b) otherwise induce any such employees to leave the Company's employment or breach an employment agreement therewith; in each case with respect to any employee of the Company with whom Producer worked or obtained knowledge about as a result of Producer's employment with the Company.

8.8. **Tolling**. Producer agrees the duration of the covenants in this Agreement shall be extended by any period of time in which Producer is in breach of any such obligations and the extended duration shall be measured from the date of the court order granting injunctive relief.

8.9. **Purpose of Restrictions**. The purpose of the covenants in this Agreement is to protect the Company's assets and to prevent any Competitive Business from gaining an unfair advantage from Producer's knowledge of the Confidential Information or misuse of the Goodwill. Producer agrees that the time and scope limitations herein are reasonable and necessary to protect the Confidential Information and Goodwill.

8.10. **Modification**. If a court finds any covenants in this Agreement exceed the permissible time or scope limitations, such covenants shall be reformed to the maximum permissible time or scope limitations. If a court refuses to enforce any of these covenants, in whole or in part, the unenforceable terms shall be eliminated ("blue penciled") or otherwise modified to the extent necessary to permit the remaining terms to be enforced. The Company may unilaterally limit the scope of these covenants.

8.11. **Independent Enforcement**. Each of the covenants in this Agreement shall be construed as an agreement independent of (i) any other agreements or (ii) any other provision in this Agreement, and the existence of any claim or cause of action by Producer against the Company or any other USI Company, whether predicated on this Agreement or otherwise, regardless of who was at fault and regardless of any claims that either Producer or the Company may have against the other, shall not constitute a defense to the enforcement by the Company of any of the covenants in Section 8 of this Agreement. The Company shall not be barred from enforcing any of the covenants in

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Section 8 of this Agreement by reason of any breach of (i) any other part of this Agreement or (ii) any other agreement with Producer.

## 9. TERMINATION

9.1. ***Termination by the Company***.  The Company may terminate Producer's employment hereunder by giving written notice to Producer.  The termination of employment shall be effective on the date specified in such notice.

9.2. ***Termination by Producer***.  Producer may terminate Producer's employment hereunder by giving at least sixty (60) days written notice to the Company.  The termination of employment shall be effective on the date specified in such notice; provided, however, at any time following receipt of such notice, the Company may:  (a) accept Producer's termination of employment hereunder effective on such earlier date specified by the Company; and/or (b) require Producer to cease performing any services hereunder until the termination of employment.

9.3. ***Payments Upon Termination***.  If Producer's employment hereunder is terminated pursuant to Section 9, the Company shall:  (a) reimburse Producer for any expenses properly incurred through the date of termination pursuant to Section 6; and (b) pay Producer any earned and payable commissions through the date of termination (in excess of Producer's Draw and any other applicable offsets) pursuant to Section 3.4.

9.4. ***Miscellaneous Termination Provisions***.  Upon termination of Producer's employment hereunder, Producer hereby irrevocably promises to:

(a) Immediately return to the Company any and all property of any of the USI Companies in Producer's possession or control, including electronic devices and equipment, corporate credit cards, and building keys, including any and all such property acquired as a result of employment with Seller.

(b) Immediately destroy or return to the Company, as directed by the Company, any and all documents, data or other materials (and all copies thereof) in Producer's possession or control, whether in written, digital or other form, which contain or refer to any Confidential Information, including any and all such materials acquired as a result of employment with Seller.

(c) Not access any of the USI Companies' internal or restricted premises, records, files, databases, networks, websites, emails, voicemails, or other communications.

(d) For two (2) years after Producer is no longer employed hereunder, for any reason, provide each new employer with a copy of Section 8 of this Agreement prior to taking any position with such new employer.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(e) Subject to obligations under applicable laws and regulations, not publicly make any statements or comments that disparage the reputation of any of the USI Companies or their senior officers or directors.

10. **REMEDIES**. Producer acknowledges: (a) the services to be rendered by Producer are of a special, unique, and extraordinary character; (b) it would be extremely difficult or impracticable to replace such services; (c) the material provisions of this Agreement are of crucial importance to the Company; and (d) any damage caused by Producer's breach of Section 8 of this Agreement would result in irreparable harm to the business of the Company for which money damages alone would not be adequate compensation. Accordingly, Producer agrees, if Producer violates Section 8 of this Agreement, the Company shall, in addition to any other rights or remedies of the Company available at law, be entitled to equitable relief in a State or Federal Court located in the State of Pennsylvania, including, without limitation, temporary injunction and permanent injunction. Producer agrees to waive any requirement for the Company to post a bond.

11. **ENTIRE AGREEMENT**. No agreements or representations, oral or otherwise, express or implied, have been made with respect to Producer's employment hereunder except as set forth in this Agreement. This Agreement supersedes and preempts any prior oral or written understandings, agreements or representations by or between Producer and the Company, including without limitation, any previous employment or other similar agreement between Producer and Seller, which may have related to the subject matter hereof in any way.

12. **AMENDMENT**. Except as set forth in Sections 3.5, 8.10, 14, and other provisions herein as to which the Company expressly reserved the right to modify, no amendment or modification of this Agreement shall be valid or binding unless made in writing and signed by the Party against whom enforcement thereof is sought.

13. **GOVERNING LAW**. This Agreement shall be governed by and construed in accordance with the laws of the State of Pennsylvania, without regard to principles of conflicts of law.

14. **SEVERABILITY**. The provisions of this Agreement are intended to be interpreted in a manner which makes them valid, legal, and enforceable. In the event any provision of this Agreement is found to be partially or wholly invalid, illegal or unenforceable, such provision shall be modified or restricted to the extent and in the manner necessary to render it valid, legal, and enforceable. If such provision cannot under any circumstances be so modified or restricted, it shall be excised from this Agreement without affecting the validity, legality or enforceability of any of the remaining provisions.

15. **WAIVERS**. No waiver of any default or breach of this Agreement shall be deemed a continuing waiver or a waiver of any other breach or default. Failure to enforce any provision of this Agreement shall not be deemed a waiver of that provision or any other provision of this Agreement.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

16. **ASSIGNMENT**.    Producer may not assign any rights (other than the right to receive commissions hereunder) under this Agreement without the prior written consent of the Company.    Producer's obligations under this Agreement inure to the Company, its successors and assigns.   The Company may, at any time and without Producer's further approval or consent, assign or transfer this Agreement, by merger, asset sale or otherwise, to any subsidiary, affiliate, purchaser, acquirer or other assignee or successor.   Any such successor or assign is expressly authorized to enforce the terms of this Agreement.

Fayez Elias
Validated Producer
(Beneficial_Standard)

17 of 19

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the dates set forth below.

**USI Insurance Services LLC**                    **Producer**

By: _____        By: _____

Name: Ernest J. Newborn, II                         Fayez Elias

Title: Senior Vice President, General
Counsel and Secretary

Date: 9/28/2018                                     Date: _____

Fayez Elias
Validated Producer
(Beneficial_Standard)

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the dates set forth below.

**USI Insurance Services LLC**                    **Producer**

By: _____              By: _____

　　　Name:                                              Fayez Elias
　　　Title:

Date: _____              Date: ___9/28/2018___

Fayez Elias
Validated Producer

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Exhibit A
Certain Policies – Beneficial Bancorp, Inc. et al.

**Policy Type**
**EB:**
GMED
GSTD
GLIF
GDEN
GLTD
GPMM
GADD
IMED
GDNT
GDIS
GVIS

Fayez Elias
Validated Producer
(Beneficial_Standard)

# EXHIBIT 2

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



**Rheumatology** Specialty Center

**Rheumatic Disease Associates, Ltd.**

Charles Pritchard, MD, FACR, RhMSUS
David J. Chesner, DO, FACR, FACOI
Elana R. Eisner, MD, FACP, FACR, RhMSUS
Dennis A. Jerdan, MD, MBA, FACR
Marguerite L. McGarvey, MD, JD, FACR
Sarah Coleman, MD, FACP, FACR
Dana Jacobs-Kosmin, MD, FACP, FACR
Monica Mohile, MD, FACR
Kevin Lu, MD, MSHI

Anjali Bai, MD, FACR
Liliane Min, MD
Kaitlyn Dalsey, DO
Rohan Mehta, DO
Samuel Heath, PA-C
Alexandra Paddock, PA-C
Kara Dutko, PA-C
Karlee Wirth, PA-C

*September 30, 2025*

*To:* Sunlife

RE: Rheumatic Disease Associates, LTD

To Whom It May Concern:

This confirms that as of September 30, 2025, we have appointed Steven Needle of Edgewood Partners Insurance Center (EPIC) as our exclusive insurance broker with respect to our insurance policies written with your company. The appointment of EPIC rescinds all previous appointments and the authority contained herein shall remain in full force until cancelled in writing.

EPIC Insurance Brokers & Consultants
2405 Satellite Blvd
Suite 200
Duluth, GA 30096
Phone: 770-232-0202

EPIC is hereby authorized to negotiate directly with any interested company as respects changes in existing insurance policies and in closing, changing, increasing, or canceling insurance carried under temporary binders or cover notes. We understand, however, that they will not share responsibility for any deficiencies in the insurance program to which this letter applies until this appointment has been accepted and they have had a reasonable opportunity to make a review and to provide us with their recommendations.

This letter also constitutes your authority to furnish EPIC with all information that may be requested as it pertains to coverage, plan documents, investments, record keeping reports, and any other financial data they may wish to obtain for their study of our present and future requirements in connection with the insurance program to which this letter applies. We request that you do not communicate such information to anyone else.

We also request that you waive any waiting period and recognize EPIC as our broker effective on the date they are appointed above.

*Specializing in Rheumatoid Arthritis, Osteoarthritis, Osteoporosis, Lupus  Lyme Disease*
*Our practice does not diagnose or treat anything on our state's reportable disease list*

**Main Office:**
**Willow Grove Office**
2360 Maryland Road
Willow Grove, Pa  19090
Phone: 215-657-6776
Fax: 267-913-5961

**Other Offices:**
**Jenkintown Office**
Noble Plaza Bldg
801 Old York Rd,
Suite 320
Jenkintown, Pa  19046
Phone: 215-657-6776
Fax: 267-913-5961

**Doylestown Office**
The Pavilion
599 West State Street,
Suite 310
Doylestown  Pa  18901
Phone: 215-657-6776
Fax: 267-913-5961

**Newtown Office**
One Summit Square,
Suite 101
1717 Langhorne-Newtown Rd
Langhorne, PA  19047
Phone: 215-657-6776
Fax: 267-913-5961

**Blue Bell Office**
510 Township Line Rd
Suite 220
Blue Bell  PA  19422
Phone: 215-657-6776
Fax  267-913-5961

v.25-04-25.1

EXHIBIT 2

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



**Rheumatology Specialty Center**

**Rheumatic Disease Associates, Ltd.**

Charles Prachard, MD, FACR, RhMSUS
David J. Chesner, DO, FACR, FACOI
Elana R. Eisner, MD, FACP, FACR, RhMSUS
Dennis A. Jerdan, MD, MBA, FACR
Marguerite L. McGarvey, MD, JD, FACR
Sarah Coleman, MD, FACP, FACR
Dana Jacobs-Kosmin, MD, FACP, FACR
Monica Mohile, MD, FACR
Kevin Lu, MD, MSHI

Anjali Bal, MD, FACR
Liliane Min, MD
Kaitlyn Dalsey, DO
Rohan Mehta, DO
Samuel Heath, PA-C
Alexandra Paddock, PA-C
Kara Dutko, PA-C
Karlee Wirth, PA-C

Finally, by signing the below, we confirm that this letter was written, signed, and sent without inducement, suggestion, persuasion, or solicitation by any individual or entity and, instead, expresses our independent selection of our preferred insurance broker.

Sincerely,

*Carla Talese*

Carla Talese
Rheumatic Disease Associates

*Specializing in Rheumatoid Arthritis, Osteoarthritis, Osteoporosis, Lupus, Lyme Disease*
*Our practice does not diagnose or treat anything on our state's reportable disease list*

Main Office:
**Willow Grove Office**
2360 Maryland Road
Willow Grove, Pa 19090
Phone: 215-657-6776
Fax: 267-913-5961

Other Offices:
**Jenkintown Office**
Noble Plaza Bldg.
801 Old York Rd.
Suite 320
Jenkintown, Pa 19046
Phone: 215-657-6776
Fax: 267-913-5961

**Doylestown Office**
The Pavilion
599 West State Street.
Suite 310
Doylestown, Pa 18901
Phone: 215-657-6776
Fax: 267-913-5961

**Newtown Office**
One Summit Square,
Suite 101
1717 Langhorne-Newtown Rd
Langhorne, PA 19047
Phone: 215-657-6776
Fax: 267-913-5961

**Blue Bell Office**
510 Township Line Rd.
Suite 220
Blue Bell, PA 19422
Phone: 215-657-6776
Fax: 267-913-5961

\.25-04-25.1

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

285 St. James Place
Philadelphia, PA 19106-3944

215-923-4105

## SOCIETY HILL TOWERS

CELEBRATING 50 YEARS

www.societyhilltowers.com

*To:* Metlife

RE:     Client ID

To Whom It May Concern:

This confirms that as of September 30, 2025, we have appointed Steven Needle of Edgewood Partners Insurance Center (EPIC) as our exclusive insurance broker with respect to our insurance policies written with your company. The appointment of EPIC rescinds all previous appointments and the authority contained herein shall remain in full force until cancelled in writing.

EPIC Insurance Brokers & Consultants
2405 Satellite Blvd
Suite 200
Duluth, GA 30096
Phone: 770-232-0202

EPIC is hereby authorized to negotiate directly with any interested company as respects changes in existing insurance policies and in closing, changing, increasing, or canceling insurance carried under temporary binders or cover notes. We understand, however, that they will not share responsibility for any deficiencies in the insurance program to which this letter applies until this appointment has been accepted and they have had a reasonable opportunity to make a review and to provide us with their recommendations.

This letter also constitutes your authority to furnish EPIC with all information that may be requested as it pertains to coverage, plan documents, investments, record keeping reports, and any other financial data they may wish to obtain for their study of our present and future requirements in connection with the insurance program to which this letter applies. We request that you do not communicate such information to anyone else.

We also request that you waive any waiting period and recognize EPIC as our broker effective on the date they are appointed above.

Finally, by signing the below, we confirm that this letter was written, signed, and sent without inducement, suggestion, persuasion, or solicitation by any individual or entity and, instead, expresses our independent selection of our preferred insurance broker.

Sincerely,

*Mary Donohue*

Mary Donohue
HR

I. M Pei, Architect

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



**PRESIDENTIAL CONDOMINIUM**
191 Presidential Boulevard
Bala Cynwyd, PA 19004

610-667-0700 Main
610-667-0926 Fax

September 30, 2025

*To:* United Concordia Dental

RE: 191 Presidential Condo Association Client ID

To Whom It May Concern:

This confirms that as of September 30, 2025, we have appointed Eric Hayes of Edgewood Partners Insurance Center (EPIC) as our exclusive insurance broker with respect to our insurance policies written with your company. The appointment of EPIC rescinds all previous appointments and the authority contained herein shall remain in full force until cancelled in writing.

EPIC Insurance Brokers & Consultants
2405 Satellite Blvd
Suite 200
Duluth, GA 30096
Phone: 770-232-0202

EPIC is hereby authorized to negotiate directly with any interested company as respects changes in existing insurance policies and in closing, changing, increasing, or canceling insurance carried under temporary binders or cover notes. We understand, however, that they will not share responsibility for any deficiencies in the insurance program to which this letter applies until this appointment has been accepted and they have had a reasonable opportunity to make a review and to provide us with their recommendations.

This letter also constitutes your authority to furnish EPIC with all information that may be requested as it pertains to coverage, plan documents, investments, record keeping reports, and any other financial data they may wish to obtain for their study of our present and future requirements in connection with the insurance program to which this letter applies. We request that you do not communicate such information to anyone else.

We also request that you waive any waiting period and recognize EPIC as our broker effective on the date they are appointed above.

Finally, by signing the below, we confirm that this letter was written, signed, and sent without inducement, suggestion, persuasion, or solicitation by any individual or entity and, instead, expresses our independent selection of our preferred insurance broker.

Sincerely,

*Steven Riela*
Human Resources

# NuVision
## M A N A G E M E N T

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*September 11, 2025*

*To:* Imagine Health

RE:     BROKER AUTHORIZATION for policy numbers

To Whom It May Concern:

This confirms that as of September 11, 2025, we have appointed Steven Needle of Edgewood Partners Insurance Center (EPIC) as our exclusive insurance broker with respect to our insurance policies written with your company.  The appointment of EPIC rescinds all previous appointments and the authority contained herein shall remain in full force until cancelled in writing.

EPIC Insurance Brokers & Consultants
2405 Satellite Blvd
Suite 200
Duluth, GA 30096
Phone: 770-232-0202

EPIC is hereby authorized to negotiate directly with any interested company as respects changes in existing insurance policies and in closing, changing, increasing, or canceling insurance carried under temporary binders or cover notes.  We understand, however, that they will not share responsibility for any deficiencies in the insurance program to which this letter applies until this appointment has been accepted and they have had a reasonable opportunity to make a review and to provide us with their recommendations.

This letter also constitutes your authority to furnish EPIC with all information that may be requested as it pertains to coverage, plan documents, investments, record keeping reports, and any other financial data they may wish to obtain for their study of our present and future requirements in connection with the insurance program to which this letter applies.  We request that you do not communicate such information to anyone else.

We also request that you waive any waiting period and recognize EPIC as our broker effective on the date they are appointed above.

Finally, by signing the below, we confirm that this letter was written, signed, and sent without inducement, suggestion, persuasion, or solicitation by any individual or entity and, instead, expresses our independent selection of our preferred insurance broker.

Sincerely,

*Andrew Weisman*
*Millennium Health Systems*

# NuVision
## M A N A G E M E N T

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM. Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*September 11, 2025*

*To:* Trustmark Benefits

RE:      BROKER AUTHORIZATION for policy numbers

To Whom It May Concern:

This confirms that as of September 11, 2025, we have appointed Steven Needle of Edgewood Partners Insurance Center (EPIC) as our exclusive insurance broker with respect to our insurance policies written with your company.  The appointment of EPIC rescinds all previous appointments and the authority contained herein shall remain in full force until cancelled in writing.

EPIC Insurance Brokers & Consultants
2405 Satellite Blvd
Suite 200
Duluth, GA 30096
Phone: 770-232-0202

EPIC is hereby authorized to negotiate directly with any interested company as respects changes in existing insurance policies and in closing, changing, increasing, or canceling insurance carried under temporary binders or cover notes.  We understand, however, that they will not share responsibility for any deficiencies in the insurance program to which this letter applies until this appointment has been accepted and they have had a reasonable opportunity to make a review and to provide us with their recommendations.

This letter also constitutes your authority to furnish EPIC with all information that may be requested as it pertains to coverage, plan documents, investments, record keeping reports, and any other financial data they may wish to obtain for their study of our present and future requirements in connection with the insurance program to which this letter applies.  We request that you do not communicate such information to anyone else.

We also request that you waive any waiting period and recognize EPIC as our broker effective on the date they are appointed above.

Finally, by signing the below, we confirm that this letter was written, signed, and sent without inducement, suggestion, persuasion, or solicitation by any individual or entity and, instead, expresses our independent selection of our preferred insurance broker.

Sincerely,

*Andrew Weisman*
*Millennium Health Systems*

5310 N.W. 33rd Avenue, Suite #211 • Fort Lauderdale, Florida 33309 • 954-731-3350 • FAX 954-486-0758

# NuVision
## M A N A G E M E N T

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*September 11, 2025*

*To:* MetLife – Large Group Employee Benefits

RE:     BROKER AUTHORIZATION for policy numbers

To Whom It May Concern:

This confirms that as of September 11, 2025, we have appointed Steven Needle of Edgewood Partners Insurance Center (EPIC) as our exclusive insurance broker with respect to our insurance policies written with your company.  The appointment of EPIC rescinds all previous appointments and the authority contained herein shall remain in full force until cancelled in writing.

EPIC Insurance Brokers & Consultants
2405 Satellite Blvd
Suite 200
Duluth, GA 30096
Phone: 770-232-0202

EPIC is hereby authorized to negotiate directly with any interested company as respects changes in existing insurance policies and in closing, changing, increasing, or canceling insurance carried under temporary binders or cover notes.  We understand, however, that they will not share responsibility for any deficiencies in the insurance program to which this letter applies until this appointment has been accepted and they have had a reasonable opportunity to make a review and to provide us with their recommendations.

This letter also constitutes your authority to furnish EPIC with all information that may be requested as it pertains to coverage, plan documents, investments, record keeping reports, and any other financial data they may wish to obtain for their study of our present and future requirements in connection with the insurance program to which this letter applies.  We request that you do not communicate such information to anyone else.

We also request that you waive any waiting period and recognize EPIC as our broker effective on the date they are appointed above.

Finally, by signing the below, we confirm that this letter was written, signed, and sent without inducement, suggestion, persuasion, or solicitation by any individual or entity and, instead, expresses our independent selection of our preferred insurance broker.

Sincerely,

*Andrew Weisman*
*Millennium Health Systems*

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# NuVision
## M A N A G E M E N T

*September 11, 2025*

*To:* Horizon BCBS of NJ

RE:    BROKER AUTHORIZATION for policy numbers

To Whom It May Concern:

This confirms that as of September 11, 2025, we have appointed Steven Needle of Edgewood Partners Insurance Center (EPIC) as our exclusive insurance broker with respect to our insurance policies written with your company.  The appointment of EPIC rescinds all previous appointments and the authority contained herein shall remain in full force until cancelled in writing.

EPIC Insurance Brokers & Consultants
2405 Satellite Blvd
Suite 200
Duluth, GA 30096
Phone: 770-232-0202

EPIC is hereby authorized to negotiate directly with any interested company as respects changes in existing insurance policies and in closing, changing, increasing, or canceling insurance carried under temporary binders or cover notes.  We understand, however, that they will not share responsibility for any deficiencies in the insurance program to which this letter applies until this appointment has been accepted and they have had a reasonable opportunity to make a review and to provide us with their recommendations.

This letter also constitutes your authority to furnish EPIC with all information that may be requested as it pertains to coverage, plan documents, investments, record keeping reports, and any other financial data they may wish to obtain for their study of our present and future requirements in connection with the insurance program to which this letter applies.  We request that you do not communicate such information to anyone else.

We also request that you waive any waiting period and recognize EPIC as our broker effective on the date they are appointed above.

Finally, by signing the below, we confirm that this letter was written, signed, and sent without inducement, suggestion, persuasion, or solicitation by any individual or entity and, instead, expresses our independent selection of our preferred insurance broker.

Sincerely,

*Andrew Weisman*
*Forkidcare LLC*

5310 N.W. 33rd Avenue, Suite #211 • Fort Lauderdale, Florida 33309 • 954-731-3350 • FAX 954-486-0758

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Exhibit 2

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



USI Insurance Services
**4840** Cox Road
Suite 150
Richmond, **VA** 23060
**www.usi.com**
Tel: **804-200-5200**

October 6, 2025

**Via FedEx Delivery**

Fayez Elias
510 SE 5th Ave
Apt 1013
Fort Lauderdale, FL 33301

Dear Fayez:

This letter is to confirm your last day of employment with USI Insurance Services LLC ("Company") is October 6, 2025.

This letter is also to remind you of your continuing obligations to the Company pursuant to your Employment Agreement effective March 13, 2006 (hereinafter referred to as "Agreement"), copy of which are enclosed. The Company fully expects you to comply with your obligations under this Agreement, which continues beyond the effective date of your termination.

The Company is prepared to fully enforce its rights should it determine that you are engaged in any violation of the Agreement.

Please contact me if you have any questions.

Sincerely,

*Dimitri Devieux*

Dimitri Devieux
Regional Chief Executive Officer
USI Mid-Atlantic
DD/AW

Cc: HR File

Property & Casualty  •  Employee Benefits  •  Personal Risk  •  Retirement Consulting
The USI ONE Advantage®

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



October 6, 2025

Fayez Elias
510 SE 5th Ave
Apt 1013
Fort Lauderdale, FL 33301

Dear Fayez,

This letter will confirm receipt of your notice resigning your employment with USI Insurance Services, LLC (the "Company") effective as of the close of business on September 5, 2025.

Pursuant to your employment agreement with the Company, as amended, ("Agreement"), you are required to provide the Company with sixty (60) days required notice of your resignation. However, the Company has agreed to accept your earlier resignation, Therefore, your resignation will become effective as of the close of business on October 6, 2025.

This letter is also to remind you of your continuing obligations to the Company pursuant to your Agreement, a copy of which is enclosed. The Company fully expects you to comply with your obligations under the Agreement, including those set forth in Sections 6.5, 6.6 and 6.7 of the Agreement, which continue beyond the effective date of your resignation.

The Company is also prepared to fully enforce its rights should it determine that you are engaged in any violation of the Agreement.

Please contact me if you have any questions.

Sincerely,


Sincerely,


Kathy O'Grady
Regional Chief Human Resources Officer

---

# EXHIBIT 3

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

USI Insurance Services
**4840** Cox Road
Suite 150
Richmond, VA 23060
**www.usi.com**
Tel: 804-200-5200

October 6, 2025

**Via FedEx Delivery**

Fayez Elias
510 SE 5th Ave
Apt 1013
Fort Lauderdale, FL 33301

Dear Fayez:

This letter is to confirm your last day of employment with USI Insurance Services LLC ("Company") is October 6, 2025.

This letter is also to remind you of your continuing obligations to the Company pursuant to your Employment Agreement effective March 13, 2006 (hereinafter referred to as "Agreement"), copy of which are enclosed. The Company fully expects you to comply with your obligations under this Agreement, which continues beyond the effective date of your termination.

The Company is prepared to fully enforce its rights should it determine that you are engaged in any violation of the Agreement.

Please contact me if you have any questions.

Sincerely,

*Dimitri Devieux*

Dimitri Devieux
Regional Chief Executive Officer
USI Mid-Atlantic
DD/AW

Cc: HR File

---

Property & Casualty  ·  Employee Benefits  ·  Personal Risk  ·  Retirement Consulting
The USI ONE Advantage®

EXHIBIT 3

Case# 2025-26840-0 Docketed at Montgomery County Prothonotary on 10/31/2025 2:22 PM, Fee = $303.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



October 6, 2025

Fayez Elias
510 SE 5th Ave
Apt 1013
Fort Lauderdale, FL 33301

Dear Fayez,

This letter will confirm receipt of your notice resigning your employment with USI Insurance Services, LLC (the "Company") effective as of the close of business on September 5, 2025.

Pursuant to your employment agreement with the Company, as amended, ("Agreement"), you are required to provide the Company with sixty (60) days required notice of your resignation. However, the Company has agreed to accept your earlier resignation, Therefore, your resignation will become effective as of the close of business on October 6, 2025.

This letter is also to remind you of your continuing obligations to the Company pursuant to your Agreement, a copy of which is enclosed. The Company fully expects you to comply with your obligations under the Agreement, including those set forth in Sections 6.5, 6.6 and 6.7 of the Agreement, which continue beyond the effective date of your resignation.

The Company is also prepared to fully enforce its rights should it determine that you are engaged in any violation of the Agreement.

Please contact me if you have any questions.

Sincerely,

Sincerely,

Kathy O'Grady
Regional Chief Human Resources Officer

---

Property & Casualty · Employee Benefits · Personal Risk · Retirement Consulting
The USI ONE Advantage®

Case #2025-26840

| | |
|---|---|
| **Case Number** | 2025-26840 |
| **Commencement Date** | 10/31/2025 |
| **Last Filing Date** | 11/7/2025 |
| **Days Open** | 14 |
| **Case Type** | Complaint Civil Action |
| **PFA Number** | |
| **Caption Plaintiff** | ELIAS, FAYEZ |
| **Caption Defendant** | USI INSURANCE SERVICES LLC |
| **Lis Pendens Indicator** | No |
| **Status** | 2 - OPEN |
| **Judge** | STEVEN C. TOLLIVER |
| **Remarks** | |
| **Sealed** | No |
| **Interpreter Needed** | |

## Plaintiffs

| Name | Address | Country | Counsel | Notify | Sequence | Status |
|---|---|---|---|---|---|---|
| ELIAS, FAYEZ | 225 N.E. MIZNER BOULAVARD, SUITE 675 BOCA RATON, FL 33432 UNITED STATES | UNITED STATES | | Yes | 1 | |
| EDGEWOOD PARTNERS INSURANCE CENTER INC DBA EPIC INSURANCE BROKERS AND CONSULTANTS | 1140 AVENUE OF THE AMERICAS, 8TH FLOOR NEW YORK, NY 10036 UNITED STATES | UNITED STATES | | Yes | 2 | |

## Defendants

| Name | Address | Country | Counsel | Notify | Sequence | Status |
|---|---|---|---|---|---|---|
| USI INSURANCE SERVICES LLC | 1787 SENTRY PKWY WEST, SUITE 300 BLUE BELL, PA 19422 UNITED STATES | UNITED STATES | | Yes | 1 | |

## Docket Entries

| Seq. | | Filing Date | Docket Type | Docket Text | Sealed | Filing ID |
|---|---|---|---|---|---|---|
| 0 | E | 10/31/2025 | Complaint Civil Action | | No | 15133336 |
| 1 | | 11/7/2025 | (Internal Use Only) Served | USI INSURANCE SERVICES LLC ON 11/5/25 | No | 15141655 |

EXPEDITED                     25013072



## MONTGOMERY COUNTY SHERIFF'S DEPARTMENT
## ORDER FOR SERVICE

To:   Sheriff Sean P. Kilkenny
      Montgomery County Court House
      P.O. Box 311
      Phone: 610-278-3331    Fax: 610-278-3832

Date: 10/31/2025

Prothonotary No. 2025-26840

Sheriff Cost: $91.00

| Attorney's Or Plaintiff's Name and Address:<br>Cozen O'connor<br>1650 Market Street<br>Suite 2800<br>Philadelphia, PA, 19103<br>ATTY. ID# 62419     Telephone: | Civil Action<br>Complaint |
|---|---|

4 354917
(Expedited)

| | FOR SHERIFF USE ONLY          SHERIFF'S RETURN |
|---|---|
| <u>FAYEZ ELIAS</u><br>                vs.          PLAINTIFF<br><u>USI INSURANCE SERVICES LLC</u><br>                      DEFENDANT<br><br>Service Upon:<br>Usi Insurance Services Llc<br><br>LOCATION<br>1787 Sentry Pkwy West, Suite 300<br>Blue Bell, PA, 19422 | PERSON SERVED Casey Remolde<br><br>RELATIONSHIP/POSITION PIC<br><br>PLACE OF SERVICE As Given<br><br>DATE OF SERVICE 11/5/25<br><br>TIME OF SERVICE 12:12<br><br>NUMBER OF ATTEMPTS 1<br><br>DEPUTY Forsyth<br><br>DEPUTY<br><br>LAST DAY FOR SERVICE 11/30/2025 |

### SERVICE NOT MADE BECAUSE:

DATE:            TIME:            DEPUTY:            DEPUTY:

|   | NO SERVICE |   | BAD ADDRESS |   | UNKNOWN AT ADDRESS |   | NEED BETTER ADDRESS |
|---|---|---|---|---|---|---|---|
|   | MOVED |   | BUILDING VACANT |   | ADDRESS OUT OF COUNTY |   | OTHER |

### POSSESSION TAKEN:

DATE:            TIME:            DEPUTY:            DEPUTY:

| ATTEMPTED SERVICE DATE & TIME | STAMP |
|---|---|

2025-26840-0001   11/7/2025 8:55 AM  # 15141655
Rcpt#Z4996135  Fee:$0.00  (Internal Use Only) Served
Main (Public)
MontCo Prothonotary

# EXHIBIT 2



[https://www.epicbrokers.com/about/](https://www.epicbrokers.com/about/) (last visited Nov. 16, 2025).



https://www.linkedin.com/company/epicinsurancebrokers/about/ (last visited Nov. 16, 2025).



https://www.themuse.com/profiles/epicinsurancebrokersandconsultants#:~:text=Working%20at%20Epic%20Insurance%20Brokers,%2C%20beliefs%2C%20and%20core%20values (last visited Nov. 16, 2025).



# Epic Insurance Brokers and Consultants

EPIC is a people-first insurance brokerage organization that helps successfully manage risk in a wide variety of fields.

**INDUSTRY**
Insurance

**LOCATION**
San Francisco, CA

**SIZE**
1,001 - 5,000 employees



**VIEW SLIDESHOW**

### Working at Epic Insurance Brokers and Consultants

EPIC Insurance Brokers and Consultants is a unique and innovative retail property and casualty and employee benefits insurance brokerage and consulting firm. Headquartered in San Francisco, our company has a nationwide presence with a depth of industry expertise across key lines of insurance, including commercial property and casualty, employee benefits, unique specialty program insurance, and private client services. As growth continues across the country, we remain acutely focused on delivering service excellence to our clients as well as maintaining the people-first culture that helps our employees thrive. At EPIC, we're always looking for new partners who share similar goals, beliefs, and core values.

https://www.themuse.com/profiles/epicinsurancebrokersandconsultants#:~:text=Working%20at%20Epic%20Insurance%20Brokers,%2C%20beliefs%2C%20and%20core%20values (last visited Nov. 16, 2025).



https://www.epicbrokers.com/about/contact-us/ (last visited Nov. 16, 2025).

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Case No. _____

FAYEZ ELIAS
225 N.E. Mizner Boulavard, Suite 675
Boca Raton, FL 33432

And

EDGEWOOD PARTNERS INSURANCE
CENTER, INC. d/b/a EPIC INSURANCE
BROKERS & CONSULTANTS,
1140 A venue of the Americas, 8th Floor
New York, NY 10036

Plaintiffs,

V.

USI INSURANCE SERVICES, LLC,
1787 Sentry Pkwy West, Suite 300
Blue Bell, PA 19422

Defendant

_____/

## DECLARATION OF CHARLES MALESKI

Pursuant to 28 U.S.C. § 1746, I, Charles "Chuck" Maleski, declare under penalty of perjury

as follows:

1.      My name is Charles "Chuck" Maleski. I am over 18 years of age and competent to

make this Declaration.

2.      I am employed by USI Insurance Services, LLC ("USI"), as an Employee Benefits

Practice Leader, MidAtlantic Region.

3.      As an Employee Benefits Practice Leader. I oversee and support a team of producers, account managers and technical resource professionals who form a team of USI professionals that work with USI's clients.

4.      This declaration is based on my personal knowledge, and on my review of USI's business records, which were made by, or from information transmitted by, a person with knowledge of the event described therein, at or near the time of the event described, and are kept in the ordinary course of the regularly conducted business activity of such person and USI, and it the regular practice of USI to make such records. If called as a witness. I would testify consistently with this Declaration.

5.      From September 2018 through October 6, 2025, Elias was a Producer for USI in the MidAtlantic Region. As Employee Benefits Practice Leader, MidAtlantic Region, I oversaw Elias as a Producer in my group.

6.      As a Producer for USI, Elias served as a lead salesperson and consultant and assisted clients with employee benefits lines of insurance (i.e. group health insurance, dental, vision, etc.). Elias managed a book of business (or group of USI clients) comprised of approximately 10-15 USI clients. I, along with others at USI, assigned accounts to Elias and provided him with business leads throughout the duration of his employment.

7.      Elias signed an employment agreement with USI on or about September 28, 2018.

8.      The USI client accounts managed by Elias generated well over $75,000 in annual commissions.

9.      The amount of Elias's annual salary and bonuses is also well over $75,000.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is

true and correct.

Date: November 14, 2025

By:

Printed Name: Charles Maleski