**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FAYEZ ELIAS and EDGEWOOD PARTNERS INSURANCE CENTER, INC. d/b/a EPIC INSURANCE BROKERS & CONSULTANTS,<br><br>*Plaintiffs*,<br><br>v.<br><br>USI INSURANCE SERVICES, LLC,<br><br>*Defendant*. | No. 2:25-cv-06492-GAW |

**MEMORANDUM**

Plaintiffs Fayez Elias ("Elias") and Edgewood Partners Insurance Center, Inc. d/b/a EPIC Insurance Brokers & Consultants ("EPIC") (collectively, "Plaintiffs" or "EPIC") brought an action against Defendant USI Insurance Services, LLC ("USI") in the Court of Common Pleas of Montgomery County, Pennsylvania. USI removed the matter to federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1). *See* Notice of Removal (Dkt. 1). USI posited that it was a citizen of Delaware and New York, and that Plaintiffs were citizens of Florida and California. *Id.* at ¶¶ 8–10.

EPIC moved to remand the matter to state court, asserting that it was a citizen of New York. *See* Motion to Remand (Dkt. 7) at 1. This would destroy complete diversity and deprive the federal courts of subject matter jurisdiction. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003) ("Jurisdiction under 28 U.S.C. § 1332(a)(1) [ ]

requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants." (citation omitted)).

USI opposed EPIC's Motion to Remand. *See* Response in Opposition (Dkt. 13). This Court subsequently ordered the parties to engage in discovery limited to the issue of jurisdiction. *See* Order (Dkt. 20). Following discovery and a hearing, *see* Minute Sheet (Dkt. 25), the Court ordered that the parties file supplemental memoranda, *see* Order (Dkt. 26). The Motion to Remand is now ripe for adjudication.

The issue here is whether EPIC is a citizen of New York. A "corporation shall be deemed to be a citizen of every State … by which it has been incorporated and of the State … *where it has its principal place of business*[.]" 28 U.S.C. § 1332(c)(1) (emphasis added).

The Supreme Court has interpreted the phrase "principal place of business" to mean "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This is often called the corporation's "nerve center[,]" which "will typically be found at a corporation's headquarters." *Id.* at 80–81 (citations omitted). The Supreme Court has stressed "the need for judicial administration of a jurisdictional statute to remain as simple as possible." *Id.* at 80. There is a very real danger that "[c]omplex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims." *Id.* at 94 (citation omitted).

Of course, there are still "hard cases" under the nerve center test. *See id.* at 95. For example, the Supreme Court noted that "in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet." *Id.* at 95–96. This has only become more common since the Supreme Court gave that example in 2010. Thus, it is not always easy to determine a corporation's principal place of business, and the test does not produce automatic results. *Id.* at 94, 96.

Finally, the "burden of persuasion for establishing diversity jurisdiction … remains on the party asserting it." *Id.* at 96 (citations omitted); *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012). Therefore, in the present context, USI bears the burden.

USI has not carried that burden here. EPIC has made various representations that support its contention that its headquarters and principal place of business is in New York. EPIC's insurance licenses confirm it is headquartered in New York. *See* Dkt. 27-2; 27-3; 27-4. According to EPIC's general counsel, Jacqueline Beaudet, EPIC decided to move its headquarters from California to New York "because doing so reflected the pre-existing locations and decision-making patterns of its executives." Plaintiffs' Supplemental Memorandum (Dkt. 27) at 5 (citing Deposition of Jacqueline Beaudet (Deposition) (Dkt. 27-1) at 141–47; 150–52). This decision was made before this complaint was filed. *See id.* at 5 n.4 (citations omitted).

EPIC represents that its "operational decisions were made by Thomas O'Neil (Co-President), Philip Moyles (Co-President), Adam Meyerowitz (then the COO) and Frank Mammaro (CFO), with input from Jacqueline Beaudet (General Counsel)." *Id.* at 6 n.5 (citing Deposition at 130–31; 169; 214); *see also* Dkt. 27-24 (draft of an internal message announcing the new headquarters and explaining "New York City, where much of our senior leadership is based, stands out as a strategic choice"). EPIC explains that O'Neil is a remote Florida employee who spends half the year in Connecticut, Moyles is a New York employee who works at headquarters, Meyerowitz was a Georgia employee who worked in Atlanta, Mammaro is a New Jersey employee who works in New Jersey City, and Beaudet is a remote New York employee. Plaintiffs' Supplemental Memorandum at 7–8 (citations omitted).

In the months preceding the filing of this action, the VPN logins from the executives' EPIC laptops show O'Neil was in the New York office zero times, Moyles 53 times, Meyerowitz twice, Mammaro six times, and Beaudet four times. *Id.* at 8 (citation omitted). There were no VPN logins from these executives at the California office that USI asserts may be the true headquarters. *Id.*

Together, this is enough to support EPIC's assertion that its principal place of business is at its headquarters in New York. It is true the executives are spread out and are largely remote. Yet they collectively have significant ties to the New York office. While there is a paucity of "Third Circuit []or Eastern District of Pennsylvania case law expressly addressing the nerve center test in the context of remote work, several Courts in California have considered this issue." *Gaete v.*

*Arctic Glacier Premium Ice*, No. 24-CV-1396, 2025 WL 642092, at *4 (E.D. Pa. Feb. 27, 2025) (Goldberg, C.J.). Notably, one court held a corporation's principal place of business was the office with "a plurality of its officers with strategic, decision-making, and financial authority, and is the only single place home to more than one of them." *Colmenares v. Paedae, Inc.*, No. CV 21-5221-DMG (KSX), 2021 WL 4934976, at *4 (C.D. Cal. Oct. 22, 2021). Another court used an office's designation as headquarters to break a tie between plausible locations for the principal place of business. *See Vazquez v. DataRobot, Inc.*, No. 22-CV-07619-LB, 2023 WL 6323101, at *9 (N.D. Cal. Sept. 28, 2023).

In response, USI points to various factors in an attempt to show EPIC's principal place of business is actually in California, New Jersey, or Florida. *See* Defendant's Supplemental Memorandum (Dkt. 28) at 12–15. USI also correctly asserts that a "headquarters" designation is not enough to conclusively establish the location of the corporate nerve center. *See id.* at 9. Nevertheless, as explained above, there are still "hard cases" under the nerve center test, especially "in this era of telecommuting[.]" *Hertz Corp. v. Friend*, 559 U.S. at 95–96.

The fact that USI can point to some high-level control that occurs outside of the New York office is not enough to carry its burden here. EPIC has plausibly argued that its principal place of business is in New York, and USI's evidence to the contrary is insufficient to refute EPIC's claim. That, following discovery, USI proposes three different possible principal places of business is somewhat illustrative of the deficiencies with USI's position: It may be true that EPIC has "divide[d its] command and coordinating functions among officers who work at

several different locations, perhaps communicating over the Internet." *See id.* Still, overall, EPIC's evidence "nonetheless points [the Court] in a single direction, toward the center of overall direction, control, and coordination[,]" which in this case is the New York office. *See id.* at 96.

USI also asserts that "EPIC's so-called headquarters move was a paper exercise[,]" characterizing the action as a "litigation position." Defendant's Supplemental Memorandum at 1. Yet USI gives no plausible reason why an organization of EPIC's size would go to such lengths merely to litigate this case in state court rather than federal court. Having served on both benches, it is this Court's experience that the jury pools in the Eastern District of Pennsylvania and Montgomery County are fairly similar.

Lastly, it is worth addressing USI's argument that the Court should disbelieve EPIC's contentions about its New York office because EPIC represented to two other courts that its headquarters was in San Francisco, and because EPIC continued to represent online and to its employees that its headquarters was in San Francisco. Defendant's Supplemental Memorandum at 1, 5. EPIC, however, has provided reasonable explanations in response. According to EPIC, the headquarters was erroneously listed in two court filings because the attorneys handling the cases had not been notified about the change. Plaintiffs' Supplemental Memorandum at 7 (citation omitted). Additionally, news of the change was not communicated more widely "because of a combination of turnover in the marketing department and a fear of offending some long time employees who worked in what was formerly EPIC's headquarters." *Id.* at 7 n.6 (citation omitted).

Still, USI's argument at times goes further than merely suggesting EPIC's prior representations should affect this Court's credibility determination: USI insists "EPIC should be barred from now claiming New York as its [principal place of business] after repeatedly representing to other courts that it is headquartered in California." Defendant's Supplemental Memorandum at 1. Yet somewhat conflictingly, USI also acknowledges that judicial estoppel cannot be used to create subject matter jurisdiction. *Id.* at 2. USI is correct about the latter point. "[N]ot even [ ] egregious conduct by a litigant could permit the application of judicial estoppel as against a jurisdictional rule." *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 298 (2023). Therefore, estoppel has no role to play here.

In sum, this Court concludes that EPIC's principal place of business is in New York. EPIC is consequently a citizen of New York and there is not complete diversity among the parties. This deprives the Court of subject matter jurisdiction over the dispute. Accordingly, the Motion to Remand will be granted. An appropriate order follows.

DATED: August 28, 2026

BY THE COURT:



GAIL A. WEILHEIMER, J.